**MRS. M., on behalf of HER DAUGHTER, "T," an infant who has been designated by the Defendant as student # 009500003, Plaintiff,**

v.

**TRI–VALLEY CENTRAL SCHOOL DISTRICT, Defendant.**

No. 03 CIV.8464(CM)(MDF).

United States District Court, S.D. New York.

March 9, 2002.

Raymond G. Kruse, Spring Valley, NY, for Plaintiff.

Garrett Lord Silveira, Shaw & Perelson, LLP, Highland, NY, for Defendant.

## DECISION DISPOSING OF CROSS–MOTIONS FOR SUMMARY JUDGMENT

McMAHON, District Judge.

Plaintiff and her daughter reside in the Tri–Valley Central School District, a small, rural public school district in Sullivan and Ulster Counties. "T" was, at the inception of this lawsuit, an eighth grader. She had been designated by the District's Committee on Special Education as an educationally disabled student in need of special education.

In the fall of 2002, plaintiff was dissatisfied with the Individualized Education Plan ("IEP") that was created for her daughter for the period October 10, 2002 to October 9, 2003 (seventh grade). She formally requested a due process impartial hearing on December 6, 2002.

The written request identified the issues to be comprehended in the hearing and proposed resolutions acceptable to the plaintiff. Plaintiff identified four areas of concern: (1) the IEP failed to provide measurable goals and objectives (plaintiff sought to have the plan rewritten); (2) the aide who performed 1:1 aide services to "T" was an impediment to "T's" learning (plaintiff sought to have the aide replaced); (3) the IEP contained "vague, non-specific and contradictory recommendations" (rewrite); and (4) the IEP had not been

properly communicated to school personnel (this should be done).

On December 19, 2002, representatives of the District and plaintiff met and agreement was reached to reconvene the Committee on Special Education to formally discuss and implement changes in the IEP that would address plaintiff's concerns. The District's counsel offered a settlement of the requested hearing by agreeing to reconvene the CSE to address issues of concern. Counsel asked plaintiff to explain why the aide needed to be replaced, and assured plaintiff that all appropriate personnel who worked with "T" had been apprised of the details of her IEP. Counsel for plaintiff rejected the settlement offer.

On January 7, 2003, the CSE reconvened to discuss "T's" IEP. The entire IEP was reviewed and revised. Plaintiff attended the meeting. The revised IEP was sent to plaintiff's attorney and the CSE agreed to reconvene on the next day. Later, on January 7, plaintiff advised the District that, after speaking to her lawyer, she was canceling the session for the next day and insisted on proceeding to a hearing.

On January 9, the impartial hearing convened. The impartial hearing officer ordered the parties to attend a new CSE meeting and fully participate in a discussion of all issues. Pursuant to that order, the CSE was reconvened on January 15. Plaintiff attended. The lawyers for both sides did not attend. At this meeting, agreement was reached on all matters except that plaintiff continued to disagree with the provision of counseling services for "T," and refused to discuss "motor goals" until she had reviewed them with her attorney.

After receipt of a January 23 letter from plaintiff's counsel, which raised numerous and far more specific questions concerning the details of the IEP, the parties again met (on February 19, 2003) and resolved all outstanding issues except with regard to counseling for "T." The agreement was memorialized in a letter from the School District's counsel to plaintiff's counsel.

Meetings and correspondence ensued, and in May 2003, plaintiff insisted that her objections to the IEP had not been finally resolved. Therefore, the impartial hearing reconvened on June 10, 2003. After again being directed to do so by the hearing officer, the parties resolved the rest of their differences. Plaintiff insisted that the settlement be placed on the record, and it was, in a telephonic settlement conference with the hearing officer. The terms of the settlement were incorporated into "T's" IEP for the following school year.

On or about July 17, 2003, plaintiff's counsel requested that attorneys' fees incurred for the period December 2002 through June 2003 (when the settlement was memorialized on the record) be paid by defendant District. When the District failed to pay those bills, plaintiff filed this action, insisting that she was the "prevailing party" in the impartial hearing, and was therefore entitled to have defendant pay her attorneys' fees pursuant to the Individuals with Disabilities Education Act, 20 U.S.C. § 1415(i)(3)(B).

**The Applicable Law**

The relevant provision of IDEA authorizes a district court, in its discretion, to award reasonable attorney's fees to the parents of a child who is a prevailing party in any action or proceeding brought under Section 1415 of the IDEA. Another provision of IDEA prohibits the award of attorney's fees to a parent for any legal services performed after receipt of a written offer of settlement, made more than ten (10) days prior to the commencement of an administrative proceeding, if such offer is

not accepted and the court determines that the relief finally obtained is not more favorable to the parent than was the settlement offer. 20 U.S.C. § 1415(i)(3)(D)(i)(I)-(III). Finally, IDEA requires a court to reduce the amount of attorney's fees to be awarded whenever the court finds that the parent has unreasonably protracted the final resolution of the controversy, the hourly rate sought by the attorney unreasonably exceeds the prevailing rate in the community for lawyers of reasonably comparable skill, reputation and experience, the time expended is excessive, or the attorney did not provide the district with the appropriate information in the due process complaint. 20 U.S.C. § 1415(i)(3)(F)(i)-(iv).

Defendant moves for summary judgment dismissing the complaint. In the alternative, it seeks a substantial reduction in the amount of fees to be awarded. Plaintiff cross-moves for summary judgment awarding her the full amount of fees sought—$25,600.28.

**Plaintiff is Not Disentitled to Recover Prevailing Party Attorneys' Fees**

■ A party attains "prevailing party" status if that party attains success on any significant issue in the litigation that achieves some of the benefit sought in bringing the litigation, and the manner of the resolution of the dispute constitutes a change in the legal relationship of the parties. *Hensley v. Eckerhart,* 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). It is a generous formulation—even a nominal victory confers "prevailing party" status. *Farrar v. Hobby,* 506 U.S. 103, 105, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992), and the requisite change in the parties' legal relationship also presents a very low threshold. Even a settlement placed on the record of an administrative proceeding constitutes sufficient "judicial imprimatur" to qualify. *D.M. ex rel. G.M., C.M. v.*

*Board of Educ., Center Moriches U.F.S.D.,* 296 F.Supp.2d 400, 403–05 (E.D.N.Y.2003).

■ Defendant concedes that the requisite standard has been met in this case and that plaintiff is indeed a "prevailing party." Nonetheless it asks this court to exercise its discretion to deny plaintiff any award of attorney's fees, on the ground that the relief finally obtained by plaintiff in the final settlement was not more favorable than what was set out in the defendant's "admittedly, somewhat imprecise" December 19, 2002 settlement offer (Defendant's Moving Br. at 9)—delivered more than ten days before the commencement of the impartial hearing on January 9, 2003. Defendant excuses the "imprecision" of its settlement offer on the alleged imprecision of plaintiff's original demands, as set forth in her December 6, 2002 request for an impartial hearing.

Analysis of the comparative merit of the settlement offer and the final settlement achieved requires close analysis of the offer of settlement—which in turn requires an analysis of what plaintiff sought to achieve in the course of the impartial hearing.

### The December 19 Offer versus the Final Settlement

1. The IEP (Ex. D to the Cross–Moving Affidavit of Raymond Kruse) contains measurements for assessing "T's" progress in the following form:

1. Use sound generalization or blending in attacking new words with 80% mastery with moderate assistance, evaluated by recorded observations and teacher made tests, by the special education and classroom teachers by annual review date.

Every goal or objective under every heading in the IEP contains a percentage level of mastery that "T" was expected to attain in connection with that goal or objective,

the date by which that level of mastery was expected to be attained, and an identification of who was to evaluate attainment of the goal.

In the December 6 letter, counsel asked first that the annual goals and short-term objectives in the IEP be rewritten to provide measurable annual goals or benchmarks, or short-term objectives that comply with Federal or State statutes, rules or regulations. It does not specify which goals, benchmarks or objectives were insufficiently measurable or which Federal regulations, rules or statutes were not complied with.

The December 19 settlement offer conveyed by the District's counsel responding to this request offered to convene a meeting to discuss plaintiff's complaints in this regard. It did not offer to rewrite the goals and objectives or suggest any alternative means of "measuring" "T's" progress toward meeting the standards and goals listed in her IEP.[1]

The final settlement placed on the record (Silveira Aff. Ex. G—Transcript of Settlement Conference) does not require defendant to rewrite the goals, benchmarks or objectives contained in the IEP to incorporate any new or different way of measuring those goals, benchmarks or objectives. It does require that there be one specific change in the wording of the IEP language relating to annual goals and short-term objectives (which appears on pages 4, 5 and 6 of the IEP):[2]

E: Baseline abilities related to student's math goals/objectives shall be established by teacher assessment of the student on or before September 12, 2003, and will be incorporated in the 2003–2004 IEP.

All the other changes in the wording of the IEP (and there are only 5 other agreed-upon wording changes) relate to sections other than the "Annual Goals and Short–Term Objectives" section of the Plan. For example, Item D sets forth changes to be made to the "Physical Development: Levels and Abilities" section of the Plan, which appears on page 3 of the Plan. Item C refers to a change to be made to the second sentence under "Management Needs," which in the original IEP read, "She has independence in mobility with power wheelchair, with stand-by supervision (within sight of responsible adult)" and in the settlement is revised to read, "Not entirely independent in activities of daily living within the school environment." (The settlement indicates that this appears on page four of the IEP, but in fact it is on page 3).

This hardly qualifies as a great victory for plaintiff. She got one minor change to the section of the IEP that related to her counsel's request in the December 6 letter. The IEP was not rewritten to change the measurement standards or criteria that were set forth in the original IEP, which is what plaintiff originally sought.

However, the settlement offer only offered her a conference to discuss the word-

---

1. This could be because the measurements used in the IEP are quite typical of those seen in plans of this sort. This Court reviews dozens of IEPs every year in connection with the numerous IDEA suits that are filed by disgruntled parents or school districts. Most IEPs I have seen state the measurement objectives in terms identical to those in "T's" IEP that is, as a percentage mastery of a particular skill (based on the customary 100 point scale that is used in normal school grading).

2. The settlement includes wording changes on other pages of the IEP that are not part of the "Annual Goals and Short–Term Objectives" section of the Plan. For example, the first agreed change in the wording of the IEP is to page 2 of the plan, where "T's" learning achievements to date are set forth.

ing of the IEP with respect to goals and objectives. The final settlement changed the wording of the IEP with respect to one of the dozens of goals and objectives contained therein, and because it called for a reevaluation of the baseline for measuring plaintiff's progress in mathematics, it affected the measurement criteria for that single aspect of plaintiff's curriculum. Under the law's extraordinarily low standard of "success," I am forced to conclude that plaintiff got more—an extremely modest amount of "more," but "more" nonetheless—than she was offered in December— a conference to discuss the matter, with no promise of a change.

2. Plaintiff's next request, conveyed in the December 6 letter, was for "T's" aide in Science and Social Studies classes to be changed. Defendant's response in the letter of December 19 was to say, "I am at a loss at this point in time as to the basis of any claim," and ask for more particulars. In other words, the "settlement offer" offered plaintiff nothing at all in this regard.

In the final settlement, the District agreed that "T" would receive a new Science and Social Studies aide for the following year.

The relief granted to plaintiff in the final settlement far exceeds what she was offered in the settlement offer.

Defendant seems to feel that plaintiff did not get more than she was offered because no change was made in the 1:1 aide's assignment for the 2002–2003 year, which was the year in which she made the complaint. However, I am unmoved by this argument. The hearing did not begin until the 2002–2003 school year was almost half over. The stipulation resolving the hearing and affording plaintiff relief was not entered until the very end of that school year. The law requires resolution of an impartial hearing within 45 days, but that standard was not met in this particular case. Plaintiff ought not suffer as a result of the inordinate—and illegal—delay in resolving her child's case. See *Mackey v. Board of Education for the Arlington Central School District*, 386 F.3d 158 (2d Cir.2004). The parties were not able at that point to go back and rerun the 2002–03 school year with a different 1:1 aide. The only conceivable relief was going forward relief, which plaintiff received.

3. The next December 6 request states, "The IEP contains various vague, non-specific and contradictory recommendations, which are ineffective and poorly coordinated as written, including the Behavioral Intervention Plan and consultant services." The letter does not specify whether any recommendations other than Behavioral Intervention and consultant services are "vague, non-specific and contradictory."

Defendant's response to plaintiff's vague, non-specific and contradictory complaints was to offer a meeting to address any concerns that plaintiff might have in this regard. Given the vagueness of the request for relief, the response was entirely appropriate. However, the December 19 letter offers only further discussion. It does not offer plaintiff any substantive relief.

The final settlement reached between the parties said nothing specific about the Behavioral Intervention Plan in the IEP (which is contained on a separate page appended after page 6). It also says nothing about consultant services.

The final settlement provided that "Counseling, as a related service, shall be provided on the IEP at a frequency of one (1) time per month, with a notation on the IEP that the 'Student may access additional counseling services at student's request.'" Nothing in the December 6 letter mentioned counseling, and so (not surprisingly) there is no mention of the issue in the December 19 offer of settlement. The original IEP (Kruse Ex. D)

does not contain any mention of counseling in the "Recommended Programs and Services" that are summarized on the first page of the Plan. However, 30 minutes of counseling a week was recommended as a related service under the Behavior Plan appended to the IEP (which I believe to be the same thing as the Behavioral Intervention Plan).

From correspondence between counsel for plaintiff and counsel for the district (Silveira Aff. Ex. D and E), it appears that the plaintiff did not want any mention of counseling in her daughter's IEP, except insofar as it addressed issues discussed in the IEP. Since counseling was apparently reduced from weekly to monthly at plaintiff's behest, on the whole it appears that the counseling issue was resolved in favor of the plaintiff—albeit (ironically) by the provision of a lesser level of services to "T."

Therefore, the final relief was slightly superior to the offered settlement.

4. The final request in the December 6 letter is, "['T's'] IEP has not been properly communicated to appropriate District Personnel. This should be done."

The district's response, in the letter of December 19, was to assure plaintiff that all appropriate district personnel were aware of "T's" IEP.

The final settlement mentions nothing about the communication issue. Nothing was offered and nothing was recovered.

*Conclusion:* Although just barely, the final settlement afforded plaintiff slightly more relief than she was offered in the December 19 settlement letter. Therefore, plaintiff is not barred from recovering attorney's fees.

## Plaintiff's Request for Attorney's Fees Is Granted with Modification

■ Despite the above finding, IDEA does not mandate that plaintiff be awarded attorneys' fees; such an award may or may not be made, in the sound discretion of the court. The single most significant factor to be considered by the Court is the degree of success obtained. *G.M., by R.F. v. New Britain Board of Education,* 173 F.3d 77, 81 (2d Cir.1999).

A comparison of the terms of plaintiff's initial request for relief and the terms of the settlement reveals that she got almost nothing she asked for.

Plaintiff asked that the IEP be rewritten to provide for measurable annual goals, or benchmarks or short-term objectives. She got six changes in the wording of the IEP. Only one of those changes even arguably touched on measurable annual goals or short-term objectives. Settlement items 2A, B, C, and D all correct arguable misstatements in the original IEP concerning T's current level of ability/need in several areas. Item 2F relates to the provision of once-a-month counseling services, for which no provision was made in the original IEP and which has nothing whatever to do with the inclusion of a measurable annual goal or short-term objective. Only Item 2E, relating to establishing baseline math ability, even arguably touches on the concept of measurable annual goals or short-term objectives—and that is stretching the concept in a manner most favorable to plaintiff. The concession is relatively minor in relation to what plaintiff originally requested, which would have required a wholesale revision of the last half of the IEP to alter the measurement standards incorporated therein.

Plaintiff asked that her daughter receive a new 1:1 aide in Science and Social Studies. She got exactly what she asked for.

Plaintiff asked for clarification of the vague, non-specific and contradictory recommendations contained in the Behavioral Intervention Plan and consultant services. She got a reduction in the counseling sessions offered to her daughter, which she sought, over the District's initial objection.

Plaintiff asked for better communication with school personnel about her daughter's IEP. The final settlement did not address this issue at all.

Defendant urges that plaintiff's success was so de minimis that she should not receive any attorneys' fees. Defendant also argues that the minor successes enjoyed by plaintiff did not alter or enhance "T's" program of educational service, except for the provision of counseling.

I disagree that plaintiff should receive nothing at all. However, I do conclude that the request should be substantially reduced to reflect a limited degree of success due to counsel's efforts. *Gagne v. Maher*, 594 F.2d 336, 345 (2d. Cir.1979); *United States Football League v. National Football League*, 887 F.2d 408, 414 (2d Cir.1989).

Here, the most significant change to the district's program for plaintiff's daughter is the reduction in the amount of counseling services provided to "T." In addition, plaintiff received a commitment to have a new 1:1 Sciences and Social Studies Aide assigned to her daughter for the 2003–04 school year. The District insists that this would have happened anyway, citing for evidence the fact that "T" was disciplined for hitting her 1:1 aide. However, that incident took place in the fall of 2002. The district did not commit to replacing the aide until the settlement was entered on the record in June 2003. Accordingly, it seems fair to credit plaintiff's persistence with the inclusion of this provision in the IEP.

Plaintiff seeks total fees and disbursements of $16,650.28, plus additional Federal action fees of $8,950.00 to cover the cost of bringing this action. I have no quarrel with the hourly rate charged by Mr. Kruse. He claims to have expended a total of 83.1 hours in pursuit of the rather modest settlement procured for plaintiff. It is impossible to separate out hours ex-pended in pursuit of the issues on which plaintiff prevailed from hours expended in pursuit of other issues that were not reflected in the on-the-record settlement, based on counsel's time records. Therefore, I deem it appropriate to reduce his fee award via an across the board reduction in the number of hours for which plaintiff's counsel is entitled to reimbursement.

It is beyond cavil that plaintiff's counsel's original letter was so imprecise as to be virtually uninformative about the basis for many of plaintiff's complaints, which may have made it difficult for defendant to formulate an appropriate settlement offer. When, in January 2003, plaintiff's counsel finally provided particulars of plaintiff's concerns, the parties were able to clarify and resolve almost every issue (with the notable exception of the issue of the propriety of weekly counseling for "T") in a single meeting. And plaintiff's degree of success, as discussed above, while not de minimis, was not great. Accordingly, I deem it appropriate to cut plaintiff's fee request by 50%, and to award plaintiff's counsel compensation for 41.5 hours, at a rate of $200 per hour, for a total of $8,300, plus $30.28 in disbursements for mailing and Federal Express delivery.

**The Request for Fees in Necessitated by the Filing of this Action is Referred to Judge Fox**

This case should have been compromised. The court has been put to a needless exercise in connection with this lawsuit. I am not prepared to go through it again. I am referring this matter to Magistrate Judge Mark D. Fox to determine how much plaintiff should be awarded in attorney's fees for bringing this action. In that regard, I authorize Judge Fox to take testimony concerning the efforts to compromise the fee dispute. If plaintiff refused to compromise on his number, then obviously she should not recover too much

in the way of fees for burdening the court with this action. If the district refused to pay anything, however, it overreached and plaintiff's counsel will be entitled to some compensation. Since the parties are fully aware of who took what position in settlement talks, I would encourage them to resolve this matter before they have to meet with Judge Fox, thereby cutting their losses.

This decision resolves both defendant's motion for summary judgment and plaintiff's cross motion for summary judgment. It does so by denying defendant's motion for summary judgment precluding plaintiff from collecting any fees at all; denying plaintiff's cross motion for a full award of fees; and granting defendant's motion for a reduction in the award of fees to plaintiff's counsel. The clerk of the court is directed to remove both motions from the calendar of pending motions.