**KATHLEEN H., Larry H. and Daniel H., Plaintiffs, Appellants,**

v.

**MASSACHUSETTS DEPARTMENT OF EDUCATION, et al., Defendants, Appellees.**

**No. 98–1006.**

United States Court of Appeals, First Circuit.

Heard June 3, 1998.

Decided Sept. 4, 1998.

Maureen A. Lee, with whom John P. Lee and Law Office of John P. Lee were on brief, for appellants.

Nicola Favorito, with whom Mary Ellen Sowyrda and Murphy, Hesse, Toomey & Lehane were on brief, for appellees.

Before TORRUELLA, Chief Judge, SELYA, Circuit Judge, and SCHWARZER,* Senior District Judge.

WILLIAM W SCHWARZER, Senior District Judge.

Appellants Larry and Kathleen H. reside in Mansfield, Massachusetts with Daniel H., their son. Daniel is a child with disabilities within the meaning of the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. §§ 1400–1485. When Daniel's parents and the Mansfield public school system were unable to agree on the services to be provided Daniel, the parents removed him from the public school, unilaterally enrolled him in the Learning Prep School (LPS) and requested a hearing with the Massachusetts Bureau of Special Education Appeals (BSEA). Following the hearings, the BSEA ruled in favor of the Mansfield School Committee (Mansfield), finding that with some modifications to their program, Mansfield was and is capable of meeting the child's needs, LPS was overly

restrictive, and the parents were not entitled to be reimbursed for the LPS expenses. Appellants then sought judicial review in district court, which upheld the BSEA's decision and denied their application for attorneys' fees. They now appeal from the judgment of the district court. We have jurisdiction pursuant to 28 U.S.C. § 1331, and we affirm.

## OVERVIEW

The IDEA was enacted to ensure that all children with disabilities receive a "free appropriate public education [FAPE] ... designed to meet their unique needs." 20 U.S.C. § 1400(c). "While a state may not depart downward from the minimum level of appropriateness mandated under federal law, 'a state is free to exceed, both substantively and procedurally, the protection and services to be provided to its disabled children.'" *Roland M. v. Concord Sch. Comm.*, 910 F.2d 983, 987 (1st Cir.1990) (quoting *Burlington v. Department of Educ.*, 736 F.2d 773, 784–85 (1st Cir.1984) ("*Burlington II*")). Massachusetts has chosen a higher standard: The Department of Education is required to administer programs that "'assure the maximum possible development of a child with special needs.'" *Stock v. Massachusetts Hosp. Sch.*, 392 Mass. 205, 211, 467 N.E.2d 448, 453 (1984) (quoting Mass. Gen. Laws ch. 71B § 2); *see also Roland M.*, 910 F.2d at 987; *David D. v. Dartmouth Sch. Comm.*, 775 F.2d 411, 423 (1st Cir.1985).

The FAPE is implemented through an individual education plan (IEP), a written statement that sets out an educational program to meet the particularized needs of a child with disabilities. 20 U.S.C. § 1301(a)(20). In Massachusetts, an IEP for a child is developed by TEAM, a group of individuals including "the parents, the child's teacher, designated specialists, and a representative of the [local education agency]." *Roland M.*, 910 F.2d at 988. The IEP must be reviewed annually and revised when necessary. *See id.*

Parents who are dissatisfied with their child's IEP can present a complaint and obtain a due process hearing to resolve the

* Of the Northern District of California, sitting by designation.

problem. *See* 20 U.S.C. § 1415(b)(1)(E) & (2). In Massachusetts, this function is performed by the BSEA. *See Roland M.*, 910 F.2d at 987. During the pendency of proceedings under § 1415, the child is to "remain in the then current educational placement." 20 U.S.C. § 1415(e)(3). If the school district cannot provide the FAPE itself, it can recommend that the child be placed in a private facility at no cost to the parents. *See* 34 C.F.R. § 300.401(a)(2). However, parents who " 'unilaterally change their child's placement during the pendency of review proceedings, without the consent of state or local school officials,' ... are entitled to reimbursement only if ... the public placement violated IDEA and [ ] the private school placement was proper under the Act." *Florence County Sch. Dist. Four v. Carter*, 510 U.S. 7, 15, 114 S.Ct. 361, 366, 126 L.Ed.2d 284 (1993) (quoting *School Comm. v. Department of Educ.*, 471 U.S. 359, 373–74, 105 S.Ct. 1996, 2004–05, 85 L.Ed.2d 385 (1985)).

Judicial review of the decision of the BSEA presents a two-fold inquiry: Whether the state has complied with the procedures of the Act, and whether the IEP developed through those procedures is "reasonably calculated to enable the child to receive educational benefits." *Board of Educ. v. Rowley*, 458 U.S. 176, 206–07, 102 S.Ct. 3034, 3051, 73 L.Ed.2d 690 (1982). The Act imposes procedural requirements upon state and local education agencies to "assure that children with disabilities and their parents ... are guaranteed procedural safeguards with respect to the provision of free appropriate public education." 20 U.S.C. § 1415(a). "The primary safeguard is the obligatory development of an individualized education program (IEP)." *Roland M.*, 910 F.2d at 987 (citing *Rowley*, 458 U.S. at 181, 102 S.Ct. 3034). The IEP must contain "statements about the child's current performance, long-term and short-term instructional targets, and objective criteria for measuring the student's advance." *Id.* (citing 20 U.S.C.

§ 1401(19) and 34 C.F.R. § 300.346); *see also Rowley*, 458 U.S. at 206 n. 27, 102 S.Ct. 3034. And, as noted, a school's programs must "assure the maximum possible development of a child with special needs," subject to the Act's preference for "mainstreaming," i.e., educating handicapped children and non-handicapped children together "to the maximum extent appropriate" and providing special education in "the least restrictive environment." *Id.* (citing 20 U.S.C. § 1412(5) and 34 C.F.R. § 300.552(d)).

## FACTUAL AND PROCEDURAL HISTORY

Daniel H. suffers from a language-based learning disorder. From kindergarten through the sixth grade, Daniel attended Mansfield public schools. In the first, second and third grades, Daniel received special education services in accordance with his IEP with a 502.4 prototype.[1] In the fourth grade, Daniel's TEAM modified his IEP to a 502.3 prototype, and he was mainstreamed for mathematics. In the fifth grade, Daniel was mainstreamed in all content areas after he successfully completed the Stevenson Reading and Literature Program, a special education curriculum, in accordance with his 1992–93 IEP.[2]

In 1993, before Daniel entered the sixth grade, TEAM determined that a 502.1 program would provide him with the least restrictive appropriate educational environment. The 1993–94 IEP proposed that Daniel participate in a regular education program, with one-half hour per week of speech and language monitoring and use of a notebook to exchange information between the home and the school. Daniel's parents deferred their approval of the IEP until they could obtain an independent evaluation of Daniel by the New England Medical Center (NEMC).

NEMC evaluated Daniel in November 1993 and Daniel's mother gave a copy of the

---

1. 502.x prototype numbers identify different educational plans varying with the level of integration prescribed in each plan—the lower the decimal digit, the greater the integration. Thus, a 502.5 prototype would describe a restrictive educational environment while 502.1 would refer to one of full or nearly full integration with nonhandicapped children.

2. Daniel's parents accepted the IEP after participating in the TEAM meeting.

evaluation to Mansfield school officials. NEMC determined that Daniel had difficulties processing auditory information, retrieving words, and formulating sentences. He performed below average on reading and language tests but scored well in mathematics. NEMC recommended small group speech therapy as well as weekly consultations between a speech pathologist and Daniel's classroom teacher.

Around the same time, Daniel began having several problems. Academically, Daniel's mother felt that he was struggling with his homework because it often took him three to four hours to complete. Socially, he incurred several disciplinary infractions for fighting with other students and he began defecating in his pants. As a result, Kathleen H. arranged for Daniel to be counseled by a psychologist.

After receiving NEMC's evaluation, Kathleen H. asked TEAM to modify the 1993–94 IEP to incorporate NEMC's recommendations. TEAM met in December 1993 and rewrote the IEP to reflect the special services that Daniel was then actually receiving, which included thirteen forty-minute support periods each week in the mainstream classroom, but refused to formally adopt NEMC's recommendations. In turn, Daniel's parents rejected the modified IEP on January 2, 1994. On February 7, 1994, the school offered to supplement Daniel's special education program by providing small group speech and language services twice a week, to fund regular consultations between NEMC evaluators and Mansfield personnel, and to provide Daniel with a homework organization sheet to supplement his notebook. Daniel's parents never responded to this offer.

TEAM met again in March 1994, to prepare Daniel's seventh grade IEP. The 1994–95 IEP proposed a 502.2 prototype program consisting of the thirteen forty-minute support periods per week in the mainstream classroom he was then receiving, supplemented by two forty-minute periods of speech and language instruction and consultation to Daniel's classroom teachers by the speech and language providers. Attached to the IEP were NEMC's recommendations

which Mansfield would implement "where appropriate," and Mansfield offered to fund consultations between Daniel's teacher and NEMC evaluators. Daniel's parents rejected the proposed IEP on March 31, 1994, and enrolled Daniel at LPS for the 1994–95 school year.

Daniel's parents then appealed to the BSEA. Following hearings, the hearing officer issued her decision. Her salient findings were that (1) with some modifications, Mansfield is and was capable of meeting Daniel's needs; (2) while Mansfield made procedural errors in the 1993–94 and 1994–95 IEPs, they did not rise to the level of noncompliance; (3) LPS was overly restrictive; and (4) the parents should not be reimbursed for the LPS expenses incurred during the 1994–95 period. The hearing officer found that given Daniel's progress during his first five years, it was reasonable for Mansfield to place him in an integrated class. However, she faulted Mansfield for placing too much emphasis on Daniel's classroom performance as an evaluation tool and agreed with appellants that the special services provided Daniel in the sixth grade were insufficient to maximize his potential. She listed several technical deficiencies in the IEPs: (1) They failed to specify Daniel's current level of performance and his learning style; (2) they failed to provide sufficient criteria for measuring his achievement; (3) they failed to specify one-on-one instruction in speech and language skills and individualized counseling on issues associated with adolescence; and (4) they failed to gather all this relevant information before writing Daniel's sixth grade IEP. Nevertheless, she found, that Mansfield had not acted in bad faith and that the IEPs lack of specificity did not deny Daniel substantive services. And she concluded, "The procedural mistakes in the writing of the IEP are not grave enough to assume that [Mansfield] lacks the capacity to develop or implement a special education program for Daniel."

Daniel's parents then sought judicial review. The district court upheld the BSEA decision, finding that (1) appellants had failed to show that the 1993–94 and 1994–95 IEPs were not adequate and appropriate for Daniel, and (2) the drafting deficiencies were

matters of form rather than substance and do not impeach the results actually achieved. Because it found that Daniel thrived in the mainstream experience and Mansfield was willing and able to provide the further help he needed, it held that Daniel's parents were not entitled to recover the cost of enrolling Daniel in LPS. Finally, the court determined that Daniel's parents were not prevailing parties, and therefore not entitled to recover their attorneys' fees and costs.

## DISCUSSION

### I. BSEA DECISION

#### A. *Standard of Review*

"The ultimate question for a court under the Act is whether a proposed IEP is adequate and appropriate for a particular child at a given point in time." *Burlington II*, 736 F.2d at 788. The district court's resolution of that question is a mixed question of law and fact that we review for clear error "[a]bsent a showing that the wrong legal rule was employed." *Roland M.*, 910 F.2d at 990. We "accept a district court's resolution of questions anent adequacy and appropriateness of an IEP so long as the court's conclusions are not clearly erroneous on the record as a whole." *Id.* at 990–91.

#### B. *Merits*

Appellants contend that the district court erred in concluding that the IEPs were adequate and appropriate to maximize Daniel's development in the least restrictive environment and claim the court's decision is unsupported by the record. They fail, however, to demonstrate clear error.

With regard to the 1993–94 IEP, appellants claim that the court erred in finding that Daniel made encouraging progress in the regular classroom in the first through fifth grades. They allege that Daniel "was being taught in a resource room outside of the regular education classroom" during these years, and that the court "totally ignored the facts contained in the record regarding Daniel's lack of progress during the sixth grade." The court's finding was based on the detailed findings of the hearing officer who reached the same conclusion.[3] Its review was appropriately "thorough yet deferential." *Roland M.*, 910 F.2d at 989. Appellants have failed to demonstrate that the court committed error.[4]

With respect to the 1994–95 IEP, appellants contend that the court erred in finding that the changes ordered by the hearing officer simply gave a more accurate account of the services Daniel had actually received. The hearing officer ordered Mansfield to adopt certain NEMC recommendations regarding increased speech and language instruction, small-group reading and writing instruction, and bi-weekly counseling. She also found, however, that with proper accommodations, Daniel's needs can be met at Mansfield, which is the least restrictive environment for him. And she concluded that Mansfield's procedural errors did not rise to the level of noncompliance. Thus, even if the IEP was initially deficient, our focus in assessing its adequacy is on the IEP as it emerges from the administrative review process. *See Roland M.*, 910 F.2d at 988; *see also Amann v. Stow Sch. Sys.*, 982 F.2d 644, 650–51 (1st Cir.1992) (IEP adequate and appropriate even though hearing officer ordered modifications). We discern no error.

Appellants also rest their argument on the IEP proposed for 1995–96, pointing out that its recommendation to place Daniel in a 502.4 prototype program (as opposed to the 502.2 prototype in the 1994–95 IEP) con-

---

3. The hearing officer found that "[t]he records compiled over the time Daniel attended Mansfield show that he made effective educational progress in academic, development and social areas, especially during the first five years at the school.... Given the consistent degree of progress attained by Daniel during those first five years ... and his positive experiences in the mainstream during the fifth grade, it was reasonable for Mansfield to believe that the child would do well in a totally integrated class.... Hence,

the initial offer of a 502.1 prototype program during the 1993–1994 school years was appropriate."

4. Appellants fault the court for erroneously attributing a statement by Daniel's teacher about the adequacy of services provided to Daniel to the hearing officer but they do not challenge the accuracy or relevance of the statement.

tradicts the court's findings. Under the IDEA's scheme, however, an IEP must be reviewed annually and revised when necessary. The fact that Mansfield revised Daniel's IEP between the 1994–95 and the 1995–96 school years is not evidence that the IEP for the previous year was inadequate.

We conclude that appellants have failed to demonstrate clear error in the district court's ruling that the IEPs were adequate and appropriate. *See Burlington II*, 736 F.2d at 794 (parents bear burden of proving IEP's inadequacy); *see also Amann*, 982 F.2d at 650 (same). As we stated in *Roland M.*, "[b]efore an IEP is set aside, there must be some rational basis to believe that procedural inadequacies compromised the pupil's right to an appropriate education, seriously hampered the parents' opportunity to participate in the formulation process, or caused a deprivation of educational benefits." 910 F.2d at 994. The district court was satisfied that appellants' showing failed to meet that test and we see no clear error in its conclusion.

## II. ATTORNEYS' FEES AND COSTS

The IDEA provides that a "prevailing party" may be awarded attorneys' fees and costs:

> In any action or proceeding brought under this subsection, the court, in its discretion, may award reasonable attorneys' fees as part of the costs to the parents or guardian of a child or youth with a disability who is the prevailing party.

20 U.S.C. § 1415(e)(4)(B). The standards governing the award of attorneys' fees under 42 U.S.C. § 1988 are applicable to awards under the IDEA. *See Hensley v. Eckerhart*, 461 U.S. 424, 433 n. 7, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983); *Jodlowski v. Valley View Community Unit Sch. Dist. #365–U*, 109 F.3d 1250, 1253 n. 2 (7th Cir.1997); *Urban v. Jefferson County Sch. Dist. R–1*, 89 F.3d 720, 729 (10th Cir.1996); *Abu–Sahyun v. Palo Alto Unified Sch. Dist.*, 843 F.2d 1250, 1252 (9th Cir.1988). The district court denied the application for fees, finding that appellants were not prevailing parties because: (1) They did not receive "the principal relief they requested, that is, reimbursement of the LPS tuition" and (2) the changes made

in the IEPs either "simply gave a more accurate account of the services Daniel had actually received" or reflected minor and technical changes. We review the district court's denial of attorneys' fees for abuse of discretion. *See Williams v. Hanover Hous. Auth.*, 113 F.3d 1294, 1301 (1st Cir.1997) (denial of attorneys' fees under 42 U.S.C. § 1988).

To qualify as a prevailing party, a litigant must demonstrate that: (1) He obtained relief on a significant claim in the litigation; (2) such relief effected a material alteration in his legal relationship with the defendant; and (3) the alteration is not merely technical or de minimis in nature. *See Texas State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 791–93, 109 S.Ct. 1486, 103 L.Ed.2d 866 (1989); *Farrar v. Hobby*, 506 U.S. 103, 111–12, 113 S.Ct. 566, 573, 121 L.Ed.2d 494 (1992) ("a plaintiff 'prevails' when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff"); *see also Hensley*, 461 U.S. at 433, 103 S.Ct. 1933 (litigant is a prevailing party "if [he] succeed[s] on any significant issue in litigation which achieves some of the benefit the parties sought in bringing the suit"). A party may demonstrate the changed legal relationship in one of two ways: "The party either must enjoy bottom-line success in the litigation or act as a catalyst in causing the desired alteration." *Paris v. U.S. Dept. of Hous. & Urban Dev.*, 988 F.2d 236, 238 (1st Cir.1993); *see also Nadeau v. Helgemoe*, 581 F.2d 275, 278–79 (1st Cir.1978).

Appellants contend that they were prevailing parties because they succeeded on several significant issues. They contend that their overall goal was to increase the special education services provided to their son, "not to obtain reimbursement of the private school tuition." The record belies that contention. The specific relief appellants sought in their complaint was a determination that LPS was appropriate for Daniel and that they were entitled to reimbursement for the

expenses of LPS.[5] The hearing officer denied this relief. We agree with the district court's finding (which appellants do not dispute) that the only relief they received from the BSEA decision was in the form of some modifications to the 1993–94 and the 1994–95 IEPs. "[T]he plaintiff cannot qualify as a 'prevailing party' if his 'success on a legal claim can be characterized as purely technical or de minimis....'" *Kerry B. v. Union 53 Public Schools*, 882 F.Supp. 184, 187 (D.Mass.1995) (quoting *Texas State Teachers Ass'n*, 489 U.S. at 792, 109 S.Ct. 1486). Even if the BSEA decision were seen as resulting in some improvements in Daniel's program, it was not an abuse of discretion for the district court to deny attorneys' fees where the changes ordered are de minimis "in the context of the Parents' broader goals in this case." *Monticello Sch. Dist. No. 25 v. George L.*, 102 F.3d 895, 908 (7th Cir.1996) (affirming denial of attorneys' fees despite changes to IEP ordered by hearing officer).[6]

▆▆▆ Nor can appellants prevail under a catalyst theory. To qualify, appellants must show "'(1) a causal connection between the litigation and the relief obtained, and (2) that the fee-target did not act gratuitously.'" *Williams*, 113 F.3d at 1299 (quoting *Guglietti v. Secretary of Health & Human Servs.*, 900 F.2d 397, 401 (1st Cir.1990)); *see also Payne v. Board of Educ., Cleveland City Sch.*, 88 F.3d 392, 398 (6th Cir.1996). Appellants argue that their pursuit of their legal remedies caused Mansfield to provide additional educational services under the 1995–96 IEP (changes which the district court found to be minor and mostly technical in nature). There is no indication, however, that Mans-

field would have failed to include a 502.4 prototype and additional special education services in Daniel's 1995–96 IEP but for the administrative hearing. *See Payne*, 88 F.3d at 400 ("Even where a defendant makes some changes following administrative proceedings that comport with a plaintiff's demands, if the actions are taken unilaterally by the defendant and there is no indication that they would not have transpired had the plaintiff not pursued the administrative process, the plaintiff cannot qualify as a 'prevailing party' for fee-shifting purposes.") (citing *Combs v. School Bd. of Rockingham County*, 15 F.3d 357, 362 (4th Cir.1994)). The hearing officer made no recommendations for future IEPs or suggestions that Daniel should be placed in a more restrictive learning environment. Rather, the hearing officer found that "[Mansfield's] personnel has [sic] always had Daniel's educational best interest at heart," and "[t]he amount of progress achieved by [Daniel] is the result of the concerted actions of a truly committed school, the great support of his parents and Daniel himself, all working together as they should." Mansfield held multidisciplinary team meetings and developed IEPs in accordance with the IDEA before the request for a hearing was made and continued to comply with the IDEA without regard to that request. *See Payne*, 88 F.3d at 400; *Salley v. St. Tammany Parish Sch. Bd.*, 57 F.3d 458, 468 (5th Cir.1995) (denying "prevailing party" status where the plaintiff was well aware that a beneficial result might have been obtained at any time without regard to the existence of due process hearings); *Wheeler v. Towanda Area Sch. Dist.*, 950 F.2d 128,

---

5. In their complaint seeking judicial review of the BSEA decision, appellants requested the following relief:

    1. The Court reverse the decision of the Bureau which found that Mansfield's IEPs for the 1993–1994 and 1994–1995 school years were appropriate.

    2. The Court find that the Learning Prep School is appropriate to address Daniel H.'s special educational needs so as to assure his maximum possible development in the least restrictive environment.

    3. The Court find that the Parents are entitled to reimbursement for expenses of the Learning Prep School from September 1994, to June 1995.

    4. The Court find that the Parents are entitled to be reimbursed for legal fees and costs incurred.

    5. For such other and further relief as this Court may deem meet and proper.

6. The *Monticello* court held that although the parents were prevailing parties, given the changes ordered in the IEP, "[u]nder either the *Farrar* majority opinion or Justice O'Connor's concurring opinion, the Parents have not shown that the district court abused its discretion in denying the Parents attorneys' fees in this action." 102 F.3d at 908.

**16**

132 (3d Cir.1991) ("Neither the hearing officer nor the Secretary ordered the School District to do anything that they were not already doing."). Appellants not having met the first prong of the catalyst test, it is unnecessary to consider the second.

Because we agree that appellants did not obtain significant relief as a result of the litigation, we hold that the district court did not abuse its discretion in denying their application for fees.[7]

The judgment is **AFFIRMED.**

---

**7.** In view of the conclusion we reach, we need not address the applicability of § 1415(e)(4)(D).