# United States Court of Appeals
## For the First Circuit

No. 03-1407

MICHAEL D. MARONI, as parent and next friend of MICHAEL M.,

Plaintiff, Appellant,

v.

PEMI-BAKER REGIONAL SCHOOL DISTRICT,

Defendant, Appellee.

No. 03-1700

MICHAEL D. MARONI, as parent and next friend of MICHAEL M.;
MARGARET A. MARONI, as parent and next friend of MICHAEL M.

Plaintiffs, Appellants,

v.

PLYMOUTH SCHOOL DISTRICT,

Defendant, Appellee.

APPEALS FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

[Hon. Steven J. McAuliffe, U.S. District Judge]

Before

Lynch, Circuit Judge,
Lipez, Circuit Judge,
and Siler,* Senior Circuit Judge.

---

*Of the United States Court of Appeals for the Sixth Circuit,
sitting by designation.

_____

Scott F. Johnson for appellants.
Diane M. Gorrow for appellees.
Colleen Cronin and Wendy Paget on brief for amici curiae
Disability Rights Center, Inc., and National Association of
Protection and Advocacy Systems, in support of appellants.

_____

October 9, 2003

_____

LYNCH, **Circuit Judge**.  Michael M. is a student with disabilities within the meaning of the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. § 1400 et seq.  That Act grants rights intended to lead school districts to provide disabled students with a free appropriate public education (FAPE).  Id. § 1412(a)(1).  Michael and his parents brought two federal lawsuits to assert rights under IDEA.  Both suits were dismissed sua sponte by the district court because the parents proceeded without counsel.  We hold that this was error and reverse.

## I.

Michael M. was a middle school student in the Plymouth School District from 1998 to 2001 and then became a high school student in the Pemi-Baker Regional School District after 2001.  In both school systems, he and his parents sought due process hearings under the Act regarding Michael's individualized education program (IEP) and the procedures employed to develop and implement it.  Dissatisfied in each instance with the findings and decision reached in the hearings, the Maronis then sought judicial review under IDEA.  They instituted suit in federal court, without counsel, against Plymouth on December 18, 2001, and then against Pemi-Baker on November 20, 2002.  In the suit against Plymouth, the caption of the complaint included Michael M. and his parents, and in the suit against Pemi-Baker, it included Michael M. and his father.  In each suit, Michael M.'s parent(s) purportedly sued as

-2-

his next friend. Neither school district objected to the parent(s) bringing the cases on a pro se basis. Nonetheless, a magistrate judge for the District of New Hampshire, performing a screening function in pro se cases, concluded that Michael's father could not sue pro se as next friend under 28 U.S.C. § 1654 in the Pemi-Baker case. Michael's father then sought to amend their complaint to assert what he claimed were his own rights under IDEA. Pemi-Baker opposed the motion to amend, arguing that Michael's father had no individual claim under IDEA. The magistrate judge denied the motion to amend without discussion except a citation to Collinsgru v. Palmyra Board of Education, 161 F.3d 225 (3rd Cir. 1998).[1] Adopting the magistrate judge's reasoning, the district court then dismissed the complaint without prejudice on January 23, 2003.

Michael's father filed a motion to reconsider on February 7, 2003. In the supporting affidavit, he admitted that the Maronis did not meet the financial need criteria for court-appointed counsel, but indicated that they had been unable to find a lawyer who would take the case on a pro bono or contingency basis. The court denied the motion on March 10, 2003.

On the same day, the same district court judge held that Michael's parents also could not proceed pro se in the suit against

---

[1]As explained later, Collinsgru would not justify denial of a motion to amend inasmuch as that case permits parents to sue under IDEA for procedural rights and the complaint here asserted such claims.

the Plymouth School District.  The court stated that non-attorney parents could not appear pro se for their children in IDEA cases and that the case would be dismissed if Michael did not appear with counsel by April 18, 2003.  Michael's parents, acting on his behalf as next friends, then filed a motion for the court to appoint counsel based on Michael's lack of financial resources.  The court denied their motion without discussion.  On April 28, 2003, the court dismissed the case because "no appearance [had] been filed on behalf of Michael M. by an attorney authorized to practice in this court."

The Maronis appeal the dismissal of both cases, arguing that the district court erred in prohibiting them from pursuing claims for procedural and substantive violations of IDEA without an attorney.  In their brief, the Maronis also request that this court reverse the denial of appointment of counsel if it finds that they may not pursue their claims without a lawyer.  This court consolidated the two appeals.

## II.

Michael M. is a minor, as are most children with IDEA claims.[2]  Were Michael M. an adult, he could proceed pro se by

---

[2]State law is used to determine the age of majority.  Fed. R. Civ. P. 17(b).  IDEA provides a free appropriate public education to children aged three through twenty-one.  20 U.S.C. § 1412(a)(1)(A).  Claims are mooted after students turn twenty-two. See, e.g., St. Johnsbury Acad. v. D.H., 240 F.3d 163, 168-69 (2d Cir. 2001).

virtue of 28 U.S.C. § 1654, which provides that "[i]n all courts of the United States the parties may plead and conduct their own cases personally or by counsel as, by the rules of such courts, respectively, are permitted to manage and conduct causes therein." Because of his minority, he is disqualified from representing himself. Here, his parents seek to do what Michael's age prevents him from doing.

The Maronis advance two themes as to why they should be permitted to proceed pro se. The first theme, which we will call a statutory joint rights theory, is that IDEA itself grants "parties aggrieved" the right to bring suit in federal court asserting statutory violations and that parents are "parties aggrieved." If parents are indeed parties under IDEA, they may then proceed pro se under 28 U.S.C. § 1654. The second theme, the common law next-friend theory, is that courts should create an exception exempting IDEA cases from the usual common law rule preventing non-attorney parents from proceeding pro se on behalf of their minor child.[3]

The issue is one of first impression for this court. Without addressing the issue before us, this court has referred to

---

[3]Two circuits have created a similar exception in cases contesting the denial of Supplemental Security Income benefits to children, and have held that parents may sue pro se as next friends on behalf of their child in such cases. See Machadio v. Apfel, 276 F.3d 103, 105 (2d Cir. 2002); Harris v. Apfel, 209 F.3d 413, 417 (5th Cir. 2000).

parents as "aggrieved parties" entitled to judicial review under IDEA. In Providence School Dep't v. Ana C., 108 F.3d 1 (1st Cir. 1997), we stated that "[u]nder the provisions of the IDEA, all aggrieved parties, school committees and parents alike, are entitled to judicial review." Id. at 4; see also Rafferty v. Cranston Pub. Sch. Comm., 315 F.3d 21, 25 (1st Cir. 2002) ("[After a due process hearing, a]ny aggrieved party can appeal the findings and decision of the hearing officer to the state educational agency. If the parent remains dissatisfied, she can bring a civil action in federal district court." (citations omitted) (emphasis added)). This court has also treated parents as having rights under IDEA. See Maine Sch. Admin. Dist. No. 35 v. Mr. & Mrs. R., on their own behalf and on behalf of their son, S.R., 321 F.3d 9, 18 (1st Cir. 2003) ("[P]arents ordinarily must exhaust their administrative remedies before appealing to a federal court . . . ."); Weber v. Cranston Sch. Comm., 212 F.3d 41, 51 (1st Cir. 2000) (finding parents' claims to be within the zone of interests protected under IDEA and citing IDEA's statement of statutory purpose, which specifies the statute's mission "to ensure that the rights of children with disabilities and parents of such children are protected"); Kathleen H. v. Mass. Dep't of Educ., 154 F.3d 8, 13 (1st Cir. 1998) (assuming without discussion that parents can be named plaintiffs in their individual capacity in an IDEA suit). These rights have included not only procedural but also substantive

rights.  See Maine Sch. Dist., 321 F.3d at 17-18 (referring to parents' rights in the context of a compensatory education claim, which entitles a child to further special education services under IDEA to compensate for past deprivations); Kathleen H., 154 F.3d at 13 (involving judicial review of substantive claims raised in a due process hearing).

Although this court has not directly considered the issue before us, the legal landscape is not empty on this question.  Two circuits have interpreted IDEA as granting parents the right to sue pro se for procedural violations.  Collinsgru, 161 F.3d at 233 ("[IDEA] clearly grants parents specific procedural rights, which they may enforce in administrative proceedings, as well as in federal court."); Wenger v. Canastota Cent. Sch. Dist., 146 F.3d 123, 125 (2d Cir. 1998) (per curiam) ("[The parent of a child with special needs] is, of course, entitled to represent himself on his claims that his own rights as a parent under the IDEA were violated by the [school district's] failure to follow appropriate procedures.").  Collinsgru further held, over a strong dissent, that parents could not sue pro se for "substantive" claims (i.e., denial of FAPE).  We read Wenger as not discussing this latter issue, although it does prohibit parents from proceeding pro se on behalf of their children as next friends.  See Wenger, 146 F.3d at 124 (relying on the common-law rule against non-attorney parents representing their children pro se in civil suits).  In addition,

two other circuits have held without analysis that parents may not sue pro se on behalf of their children under IDEA. See Navin v. Park Ridge Sch. Dist. 64, 270 F.3d 1147, 1149 (7th Cir. 2001) (citing without further explanation cases in other circuits); Devine v. Indian Ridge County Sch. Bd., 121 F.3d 576, 581-82 (11th Cir. 1997) (stating without explanation that "there is no indication that Congress intended to [allow parental representation in] federal court" for IDEA claims). Conversely, one circuit has assumed, without discussion, that parents may bring their own substantive claims in district court. Kirkpatrick v. Lenoir County Bd. of Educ., 216 F.3d 380, 383 (4th Cir. 2000) (treating parents as within the "parties aggrieved" requirement of IDEA because 20 U.S.C. § 1415(i)(2)(A) provides that "[a] party that is unsatisfied with the state review officer's decision has further recourse in either federal or state court" and the parents were "dissatisfied" with the officer's decision regarding their claims that their daughter was denied FAPE).[4]

Courts have also, without discussion, almost uniformly permitted parents to sue pro se under the predecessor statute to IDEA, the Education for All Handicapped Children Act (EHA), 20

---

[4]But see Doe v. Bd. of Educ. of Baltimore County, 165 F.3d 260, 263-64 (4th Cir. 1998) (in the context of determining whether attorney-parents may recover attorneys' fees for representing their children in IDEA cases, stating that "we do not believe that the IDEA's provision of rights to parents means that an attorney-parent actually represents himself when he pursues IDEA services for his child").

-8-

U.S.C. § 1401 et seq.  See Kruelle v. New Castle County Sch. Dist., 642 F.2d 687, 690 & n.4 (3rd Cir. 1981) (parents may proceed pro se under the EHA, with the court noting without further explanation that the statute allows any "party aggrieved" by a due process hearing to sue in federal district court); Susan R.M. v. N.E. Indep. Sch. Dist., 818 F.2d 455 (5th Cir. 1987) (pro se parent may bring suit under the EHA, without discussion); Gregory K. v. Longview Sch. Dist., 811 F.2d 1307 (9th Cir. 1987) (same); Schreiber v. Ridgewood Bd. of Educ., 952 F. Supp. 205 (D.N.J. 1997) (same); Muth v. Central Bucks Sch. Dist., 839 F.2d 113 (3d Cir. 1988) (parent may proceed with pro se appeal under the EHA, without discussion), rev'd on other grounds sub nom., Dellmuth v. Muth, 491 U.S. 223 (1989); Rettig v. Kent City Sch. Dist., 788 F.2d 328 (6th Cir. 1986) (same).  IDEA employs the same "party aggrieved" language as the EHA regarding who may bring suit.  Compare 20 U.S.C. § 1415(e)(2) (1994) (superseded 1997), with 20 U.S.C. § 1415(i)(2)(A).

For the reasons that follow, we conclude that parents are "parties aggrieved" within the meaning of IDEA, 20 U.S.C. § 1415(i)(2)(A), and thus may sue pro se.  We also conclude that they are "parties aggrieved" regardless of whether the rights asserted are procedural or substantive.  In so holding, we acknowledge the legitimate interests of the school districts, which never sought the dismissal of these actions but chose to defend those dismissals

-9-

on appeal.  The school districts take the position that parents may not sue pro se for either procedural or substantive rights under IDEA.  They are concerned that permitting parents to proceed pro se will mean more meritless IDEA suits will be brought, requiring school districts to hire counsel and placing a considerable burden on their already stretched budgets.  The concern is real; still, there are ways to lessen the risk, discussed later.  In the end, it is Congress that makes these policy judgments.  Our view is that Congress, in enacting IDEA, thought that risk an acceptable price to pay to vindicate the aims of the statute, which seeks "to ensure that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs and prepare them for employment and independent living."  20 U.S.C. § 1400(d)(1).

A. Statutory Text of IDEA

The right-to-sue provision of IDEA, 20 U.S.C. § 1415(i)(2)(A), provides that "[a]ny party aggrieved by the findings and decision made [in a due process hearing] under subsection (f) or (k) . . . , and any party aggrieved by the findings and decision [regarding attorneys' fees] under this subsection, shall have the right to bring a civil action . . . in a district court of the

United States."[5]  The initial question is whether the term "party aggrieved" includes parents.  We view this as a pure issue of statutory construction.  If Congress included parents within the term "parties aggrieved," then the issue of whether parents as next friends under the common law may be parties under 28 U.S.C. § 1654 is irrelevant.

On a plain reading of the statute, we conclude that parents are "parties aggrieved."  In IDEA cases, federal courts review the outcome of due process hearings.  IDEA grants parents the right to invoke those due process hearings under subsections (f) and (k):  "Whenever a complaint has been received . . ., the parents involved in such complaint shall have an opportunity for an impartial due process hearing . . . ."  Id. § 1415(f)(1).  "If the child's parent disagrees with a determination that the child's behavior was not a manifestation of the child's disability or with any decision regarding placement, the parent may request a hearing."  Id. § 1415(k)(6)(A)(i).  Other sections of IDEA also refer to parents' right to a due process hearing.  See id. § 1415(e)(2)(A)(ii) (requiring that mediation not be used to "deny or delay a parent's right to a due process hearing").  Under IDEA,

---

[5]The language in the first set of ellipses is "who does not have the right to an appeal [to the state educational agency] under subsection (g)."  20 U.S.C. § 1415(i)(2)(A).  This is an exhaustion requirement.  There is a right to sue from state educational agency hearings, which are themselves subsection (f) hearings. 20 U.S.C. § 1415(f).

states may permit parents to transfer this right to a due process hearing to their child only after their child reaches the age of majority. See id. § 1415(m)(1)(B). Because the statute enables parents to request due process hearings, they are parties to such hearings and thus are logically within the group of "parties aggrieved" given the right to sue.

This reading is buttressed by the provisions of IDEA that allow appeals to the state educational agency. When a due process hearing is conducted before a local educational agency, 20 U.S.C. § 1415(g) permits "any party aggrieved by the findings and decision rendered in such a hearing [to] appeal such findings and decision to the State educational agency." In interpreting section 1415(g), this court has treated parents as "parties aggrieved" who may bring appeals to the state educational agency. See Frazier v. Fairhaven Sch. Comm., 276 F.3d 52, 59 (1st Cir. 2002) (describing section 1415(g) as providing that "if the [due process] hearing is conducted at the local level, the parent may then appeal to the state agency"). Other circuits have done the same. See, e.g., Cudjoe v. Indep. Sch. Dist. No. 12, 297 F.3d 1058, 1064 (10th Cir. 2002); Bd. of Educ. v. Kelly E. ex rel. Nancy E., 207 F.3d 931, 935 (7th Cir. 2000). If parents are "parties aggrieved" by due process hearings when seeking to appeal to a state administrative agency, then, logically, they are also parties aggrieved by due process hearings when seeking judicial review. We see no reason that the

-12-

term "party aggrieved" should have a different meaning in section 1415(i) than in section 1415(g).

This interpretation is further supported by the requirement of administrative exhaustion. Generally, the right to bring an IDEA action under 20 U.S.C. § 1415(i)(2)(A) is subject to the condition precedent that an "aggrieved party" must exhaust administrative remedies, although there are exceptions. Frazier, 276 F.3d at 59. By statute, it is the parents who may invoke those administrative remedies. See 20 U.S.C. § 1415(f)(1). It would make little sense if the parents who are explicitly permitted to invoke those administrative remedies and to exhaust them could not be parties for purposes of bringing suit.

The school districts argue that if Congress had intended the term "party aggrieved" under IDEA to mean parents, it would have explicitly said so. Congress did explicitly say that parents could bring due process hearings, and so, the argument is made, the rule of expressio unius est exclusio alterius means that Congress did not intend parents to be able to sue. This rule has no application here. Congress needed to include several categories of plaintiffs and so used a collective term. The statute does not refer to "child aggrieved" as it easily could if only the child could sue. Nor does § 1415(i)(2)(A) refer to school districts, even though they may seek review under it. See Manchester Sch. Dist. v. Crisman, 306 F.3d 1, 4 & n.3 (1st Cir. 2002) (reviewing a

federal civil suit by a school district under § 1415(i)(2)(A));
Maine Sch. Admin. Dist., 321 F.3d at 16 (noting that the school
district "could have appealed [the due process hearing] as part and
parcel of judicial review [provided under] 20 U.S.C. §
1415(i)(2)(A)").  The more likely explanation for IDEA's use of the
term "party aggrieved" instead of "parents" is that Congress sought
to confer the right to judicial review of due process hearings upon
all parties involved in such hearings: school districts, parents,
and children.

The school districts also argue that the term "party
aggrieved" does not include parents because the attorneys' fees
provision, 20 U.S.C. § 1415(i)(3)(B), refers to the child as the
"prevailing party."  To put the phrase in context, the award is
expressly made "to the parents of a child with a disability who is
the prevailing party."[6]  Id.  If anything, that language suggests
parents are aggrieved parties who bear the costs and benefits of a
successful suit.  Indeed, IDEA's attorneys' fees provision also
uses the phrase "prevailing party" to refer to parents.  See id. §
1415(i)(3)(E) (providing that "an award of attorneys' fees and
related costs may be made to a parent who is a prevailing party" in
certain circumstances).  This dual usage undercuts any argument

_____

[6]This case does not involve the question of whether attorney
parents proceeding pro se may recover attorneys' fees.  Contrast
Doe, 165 F.3d at 263.

that the attorneys' fees provision requires the term "party aggrieved" to exclude parents.

The more significant argument raised by the school district is that because Congress provided a means for prevailing children and their parents to recover attorneys' fees, Congress wanted to preclude pro se pursuit of IDEA cases. While plausible, this interpretation of Congress's intent would lead to perverse results. It is one thing to say Congress intended to encourage attorneys to represent plaintiffs in IDEA claims by allowing for attorneys' fees. It is entirely another to say that Congress intended to preclude plaintiffs' suits from going forward pro se without counsel. That Congress tried to remove one impediment to the bringing of IDEA suits hardly means Congress intended, sub silentio, to erect another impediment by forbidding pro se suits by parents. That is not how attorneys' fees provisions in the other civil rights statutes have been viewed. Although many civil rights statutes provide for attorneys' fees, see, e.g., 42 U.S.C. § 12205 (Americans with Disabilities Act); 42 U.S.C. § 1988 (28 U.S.C. §§ 1981, 1983, Title VI, and Title IX); 42 U.S.C. § 2000a-3(b) (Title II); 42 U.S.C. § 2000e-5(k) (Title VII); 29 U.S.C. § 794a(b) (Rehabilitation Act), none of these provisions has been interpreted as indicating a legislative intent to prohibit pro se suits. For these reasons, as well as the larger statutory scheme of IDEA

-15-

discussed below, we reject the school districts' position that parents are not "parties aggrieved" under IDEA for any purpose.

That leaves the question whether parents are "parties aggrieved" under 20 U.S.C. § 1415(i)(2)(A) only for purposes of pursuing claims of procedural violations, but not claims of substantive violations. This is the view of one circuit, see Collinsgru, 161 F.3d at 233, and perhaps another, see Wenger, 146 F.3d at 125, and is certainly plausible. The core reasoning is that parents are "aggrieved" only to the extent that they have rights under the statute and the only rights they expressly have are procedural. The school districts, notably, do not adopt this view -- the problems created for them by permitting pro se suits do not go away by creating a distinction between procedural and substantive claims. Further, the school districts are likely mindful that the distinction is often far from clear; they probably do not wish to spend their defense dollars litigating the issue of what is procedural and what is substantive, or what consequences follow from that determination.

Again, this is an issue of statutory interpretation: are parents "parties aggrieved" for purposes of asserting substantive claims of denial of a free appropriate public education under IDEA? The statute, we conclude, leads to the interpretation that they are.

First, the "parties aggrieved" provision does not make a distinction between procedural and substantive claims. As a general rule of administrative law, parties can be "aggrieved" by both substantive and procedural injuries. See Cella v. Togum Constructeur Ensemleier En Industrie Alimentaire, 173 F.3d 909, 911 (3rd Cir. 1999); cf. FEC v. Akins, 524 U.S. 11, 19 (1998) ("History associates the word 'aggrieved' with a congressional intent to cast the standing net broadly . . . ."). In determining whether a party is "aggrieved" by an administrative decision and may thus seek judicial review, the issue is usually not whether the injuries are substantive or procedural.

Rather, the issue is usually whether the party satisfies the constitutional and prudential standing requirements. See, e.g., Kan. City S. Indus., Inc. v. ICC, 902 F.2d 423, 429 (5th Cir. 1990) ("To determine whether a petitioner is aggrieved under 28 U.S.C. § 2344 [a statute permitting 'parties aggrieved' to seek judicial review of final orders by specified agencies], we generally incorporate traditional article III and prudential standing analysis."). To satisfy Article III standing, parties must show injury-in-fact, causation, and redressability. McInnis-Misenor v. Maine Medical Center, 319 F.3d 63, 67 (1st Cir. 2003). To meet the prudential standing restrictions, parties must show that the harm asserted is to themselves and not a generalized grievance pervasively shared by a large class of citizens, and in

-17-

statutory cases, that the claim is within the "zone of interests" protected by the statute. Id. at 68.

As to constitutional standing, parental IDEA suits meet the causation and redressability requirements. The primary issue is injury-in-fact. Parents whose children are denied FAPE suffer the injury-in-fact of either paying for private educational services or risking that their children's education will not fully prepare their children for employment and independent living. See Ores v. Willow West Condo. Ass'n, 15 A.D.D. 275 (N.D. Ill. 1996) (finding that parents suffered injury-in-fact when their disabled adult sons were denied housing on a discriminatory basis under the Fair Housing Act, because their sons lost the opportunity to live independently and the parents thus faced the financial and emotional burden of continuing to support them). That this injury to parents is based on harm that their child also suffers does not serve as a basis for distinguishing procedural and substantive IDEA claims. When parents raise procedural claims, their injuries are likewise based on harm to their child; they cannot recover unless there is "some rational basis to believe that procedural inadequacies compromised the pupil's right to an appropriate education, seriously hampered the parents' opportunity to participate in the formulation process, or caused a deprivation of educational benefits." Roland M. v. Concord Sch. Comm., 910 F.2d 983, 994-95 (1st Cir. 1990); see also Kings Local School Dist., Bd.

of Educ. v. Zelazny, 325 F.3d 724, 732 (6th Cir. 2003) (stating that a serious infringement on a parent's opportunity to participate in the formulation of his or her child's IEP is actionable because it causes "substantive harm ... and thus constitute[s] a denial of the child's right to a FAPE").

As to prudential standing requirements, this court has found that parental IDEA claims satisfy the zone-of-interests test when they are "related to the identification, evaluation, or educational placement of [the claimant's] child . . . , [or] the provision of a free appropriate public education." Weber, 212 F.3d at 51 (finding the test satisfied when the parent raised a retaliation claim under IDEA). Substantive IDEA claims, by definition, meet this standard. Parental IDEA suits also satisfy the other two prudential standing restrictions. Such suits assert parents' own right to seek judicial review under 20 U.S.C. § 1415(i)(2)(A). And the claimed harm to their child's education is not a generalized grievance.

Second, none of the provisions of IDEA regarding the right of parents to seek relief in administrative or judicial hearings draws a distinction between substantive and procedural rights.[7] Due process hearings address both procedural and

_____

[7]In drawing such a distinction, the Third Circuit in Collinsgru relied, inter alia, on a presumption against allowing parents to seek review regarding substantive claims, based on two rationales: (1) that implied rights of action are disfavored, and that allowing parents to proceed pro se on substantive claims is analogous to creating an implied right of action, and (2) that

-19-

substantive issues. A party to an IDEA due process hearing has rights to present evidence, confront and cross examine witnesses, and compel testimony. 20 U.S.C. § 1415(h). IDEA's complaint provision affords parents the "opportunity to present complaints with respect to <u>any</u> matter <u>relating to</u> the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child." 20 U.S.C. § 1415(b)(6) (emphasis added). If the parents may pursue substantive claims of denial of FAPE at due process hearings, they should be able to pursue substantive claims when they are aggrieved by the outcome of the due process hearings at which they presented those claims.[8]

---

Congress legislates against the background of the common law, and that at common law, a non-lawyer may not represent another person in court. <u>See</u> <u>Collinsgru</u>, 161 F.3d at 231-34. As to the first rationale, Congress has already created an express right of action to seek review of administrative determinations under 20 U.S.C. § 1415(i)(2)(A). The issue is one of ordinary statutory interpretation: whether the term "parties aggrieved" in § 1415(i)(2)(A) applies to parents as well as children. No right of action is being implied and, hence, no presumption need be made concerning Congress's likely intent. <u>Cf.</u> <u>Franklin</u> v. <u>Gwinnett County Pub. Sch.</u>, 503 U.S. 60, 70-71 (1992) (treating the issue as one of ordinary statutory interpretation where Congress has expressly created a remedy but the scope of the remedy is disputed). As to the second rationale, it is precisely because common law rules present barriers to parental representation that Congress chose to make parents partners to due process hearings and to give the right to sue to "parties aggrieved" by those hearings. If we are wrong in our interpretation or if our interpretation leads to too many difficulties, Congress may remedy the situation.

[8]It is true that IDEA does not have a broad enforcement provision granting standing to any person aggrieved by any violation of the Act. <u>See</u> <u>Weber</u>, 212 F.3d at 50. That is irrelevant here because these federal court actions are to review

Similarly, the attorneys' fees provision does not distinguish between procedural and substantive claims. If parents reject settlement offers that meet certain criteria, they cannot recover attorneys' fees under IDEA. 20 U.S.C. § 1415(i)(3)(D). This is true regardless of whether the parents reject settlements for procedural or substantive claims.

Third, procedural and substantive rights under IDEA are inextricably intertwined. The Supreme Court stated as much in rejecting the argument that courts have the authority only to review for compliance by states with IDEA's procedural requirements and not for the "substance of the state program." See Bd. of Educ. v. Rowley, 458 U.S. 176, 205-06 (1982) (finding that the procedural protections of IDEA are based on "the legislative conviction that adequate compliance with the procedures prescribed would in most cases assure much if not all of what Congress wished in the way of substantive content"). "IDEA's procedural guarantees . . . serve not only to guarantee the substantive rights accorded by the Act; the procedural rights, in and of themselves, form the substance of IDEA. Congress addressed the problem of how to guarantee substantive rights to a diverse group by relying on a process-based solution." Heldman v. Sobol, 962 F.2d 148, 155 (2d Cir. 1992); see also Mrs. C. v. Wheaton, 916 F.2d 69, 72 (2d Cir. 1990) (basing the

the outcome of due process hearings. Indeed, in Weber, we found that a parent asserting a separate retaliation claim had standing under IDEA in light of the central role played by parents in advancing their child's interests. Id. at 51.

-21-

conclusion that parties may be "aggrieved" under the Education of the Handicapped Act by the denial of their procedural claims on the argument that parties may be aggrieved by the denial of their substantive claims and that the two types of violations are intertwined).

B. Statutory Structure of IDEA

The interpretation of parents as "parties aggrieved" for both procedural and substantive claims is further confirmed by the structure of IDEA, which relies upon "the central role played by parents in assuring that their disabled child receives a free appropriate public education." Weber, 212 F.3d at 51 (quotation marks omitted). IDEA's procedural protections are designed to encourage parental involvement in the ultimate goal of having the child receive a free appropriate public education. The IDEA statement of purpose explicitly recognizes the statute's mission "to ensure that the rights of children with disabilities and parents of such children are protected." 20 U.S.C. § 1400(d)(1)(B) (emphasis added).

IDEA provides for extensive parental involvement in the "centerpiece" of the statute: the individualized education program, which "describes the disabled child's academic goals and special education services." Weber, 212 F.3d at 51. IDEA designates parents as part of the IEP team, 20 U.S.C. § 1414(d)(1)(B)(i),

-22-

mandates revision of the IEP to address information provided either by or to parents regarding the child's educational needs and services, id. § 1414(d)(4)(A)(ii)(III), and requires parents to be members of any group making decisions regarding the educational placement of their child, see id. § 1414(f).

In general, IDEA requires that state educational agencies "establish and maintain procedures . . . to ensure that children with disabilities and their parents are guaranteed procedural safeguards with respect to the provision of [FAPE]." Id. § 1415(a) (emphasis added). Under IDEA, school districts must obtain parental consent for educational evaluations, id. §§ 1414(a)(1)(C)(i) & 1414(c)(3), and must provide written prior notice to parents of any proposed changes to the identification, evaluation, or educational placement of their child, id. § 1415(b)(3). They must also provide "an opportunity for the parents of a child with a disability to examine all records relating to such child and to participate in meetings with respect to the identification, evaluation, and educational placement of the child, and the provision of a free appropriate public education to such child, and to obtain an independent educational evaluation of the child." Id. § 1415(b)(1).

IDEA expressly contemplates that parents will act as advocates for their children at every stage of the administrative process, from initial IEP meetings to administrative due process

hearings. IDEA regulations actually discourage parents and school districts from bringing attorneys to IEP meetings. See 34 C.F.R. Part 300, App. A ("The presence of the agency's attorney could contribute to a potentially adversarial atmosphere at the meeting. The same is true with regard to the presence of an attorney accompanying the parents at an IEP meeting.") (answer to question 29). Similarly, at due process hearings, parents have the option of proceeding pro se or being accompanied by non-attorney "individuals with special knowledge or training with respect to the problems of children with disabilities." 20 U.S.C. § 1415(h)(1). Although IDEA grants parents the right to be accompanied by counsel at due process hearings, the presence of counsel is not required. See id. IDEA also authorizes the establishment of parent training centers to improve parents' effectiveness as advocates for their children. See id. § 1482. These provisions for parental involvement are so central to IDEA's statutory scheme that when a child's parents are not known or cannot be located, IDEA provides for a surrogate to be assigned to "protect the rights of the child." Id. § 1415(b)(2). It would be odd for Congress to exclude parents from the definition of "parties aggrieved" as to substantive claims, and thus force them to find attorney representation at the federal court level, after giving parents such a strong role at every other stage of the process.

C. Congressional Intent and Legislative History

The statutory language and structure of IDEA resolve the issue of whether parents may proceed pro se on both procedural and substantive IDEA claims. Still, we check our conclusions against the legislative history to be sure there are no strong indications that the statute should be read otherwise. Nothing in the legislative history of IDEA suggests that Congress intended that IDEA cases as a whole or substantive IDEA claims alone could be brought in federal court only by lawyers. Far from demonstrating an intent to circumscribe parental involvement, the legislative history indicates Congress's commitment to encouraging parental involvement at every step of IDEA's enforcement process. The Senate Committee report recommending passage of IDEA's predecessor statute expressed its intention "to provide parent involvement and protection to assure that appropriate services are provided to a handicapped child." See Collinsgru, 161 F.3d at 237-38 (Roth, J., dissenting) (quoting the EHA, S. Rep. No. 94-168, at 11-12 (1975)).

A rule prohibiting pro se representation would subvert Congress's intent by denying many children with special needs their day in court.[9] Where parents could not obtain representation or

_____

[9]The amici brief submitted by the Disability Rights Center (DRC) and National Association of Protection and Advocacy Systems (NAPAS) sets forth the scarcity of representation available to families seeking assistance with special education matters. The DRC, which is New Hampshire's Protection and Advocacy Agency (P&A), reported that it could provide full representation in only 35 of 390 special education inquiries in 2002. Other P&As report similar shortages nationwide. Since 2000, Alaska's P&A provided

chose not to pay for counsel,[10] many children with special needs would be precluded from exercising their statutory right to judicial review of their administrative due process hearings. It is insufficient to answer that district courts can solve the problem by soliciting counsel to undertake a case or by encouraging outside representation through the award of attorneys' fees to prevailing parties under section 1415(i)(3)(B) of IDEA. It may be difficult for the court to locate counsel willing to act pro bono in complicated, record-intensive cases; there is no constitutional right to appointed counsel in a civil case, <u>Andrews</u> v. <u>Bechtel Power Corp.</u>, 780 F.2d 124, 137 (1st Cir. 1985). And attorneys'

---

representation in only 183 of 1,092 requests for help in special education matters, and Arizona's P&A did so in only 300 of 4,800 cases. Since October 1999, Michigan's P&A handled only 840 out of 6,015 education-related requests. Massachusetts's P&A provides representation in less than 10% of special education cases, and Wisconsin's P&A does so in about 25% of cases that it deems meritorious. In New York, one full-time and one part-time attorney handle over 2,000 requests for help in special education cases.

When parents cannot obtain representation from P&As, they face the even more difficult task of finding private representation. In the amici brief, P&As testify to the shortage of such private attorneys on their referral lists: Michigan has eight, Rhode Island has six, Wisconsin has fewer than ten, Texas has twenty-nine, and Arizona has only one. P&As note that most lawyers are reluctant to accept cases from families seeking judicial review of IDEA due process hearings because such cases require review of extensive administrative records. P&As observe that most lawyers will refuse to take such cases unless they represented the family in the due process hearing.

[10]Parents already have to spend family resources on litigation even to proceed pro se in court. The filing fee in district court is $150. An appeal to a court of appeals requires an additional $105 filing fee.

fees are a partial incentive at best, as they are awarded only to prevailing parties.

Furthermore, holding that parents are not "parties aggrieved" -- either for all claims or for substantive claims -- would create another anomaly that we think Congress did not intend. IDEA gives both state and federal courts jurisdiction to hear claims under the statute. 20 U.S.C. § 1415(i)(2)(A). Where state statutes permit parents to proceed pro se in state court as next friend of their children,[11] school districts could remove the cases to federal court, which would have original jurisdiction under federal question jurisdiction, 28 U.S.C. § 1331, and the IDEA right to sue provision, 20 U.S.C. § 1415(i)(2)(A). See Breuer v. Jim's Concrete of Brevard, Inc., 123 S.Ct. 1882, 1885-86 (2003) (removal is permissible where jurisdiction expressly lies in both federal and state court, even if it interferes with the plaintiff's choice of forum). If the parents did not obtain representation in federal court, it is likely that the case would be remanded to state court, thus causing further cost and delay. See Maine Ass'n of Interdependent Neighborhoods v. Comm'r of Maine Dep't of Human Servs., 876 F.2d 1051, 1054 (1st Cir. 1989); Mills v. Harmon Law Offices, 2003 WL 22111105, No. 03-1091, at *3 (1st Cir. Sept. 12, 2003).

---

[11]New Hampshire, for example, permits parents to sue on a pro se basis in state court as long as they are deemed "person[s] of good character." N.H. Rev. Stat. Ann. § 311:1.

-27-

School districts are usually represented by counsel and have, in that sense, a built-in advantage over other IDEA litigants.[12] We find it unlikely that Congress intended to put parents who attempt to proceed pro se at the even greater disadvantage of preventing their suits from going forward at all. Such an outcome subverts "Congress's original intent [in the precursor statute to IDEA] . . . that due process procedures, including the right to litigation if that became necessary, be available to all parents." Handicapped Children's Protection Act of 1986, S. Rep. No. 99-112, at 2 (1986) (emphasis added).

There are, as Collinsgru expresses, some practical concerns about recognizing parents as "aggrieved parties." Children whose interests are advanced by parents who sue pro se may not have the best advocates. Parents may be emotionally involved and not exercise rational and independent judgment. See Doe v. Bd. of Educ., 165 F.3d 260, 263 (4th Cir. 1998). But that is better for the child than having no advocate at all. Pro se litigants also impose unusual burdens on courts, and there is a desire to save courts and school districts from "poorly drafted, inarticulate, or vexatious claims." Collinsgru, 161 F.3d at 231. These are risks of the outcome we reach, but risks that can be dealt with as other pro se problems are. Important interests are

---

[12]Amici report that school districts are not represented by counsel in approximately 8% of cases before the First Circuit and the courts of New York and Texas that were reported in the Education Law Reporter.

at stake in IDEA, and permitting pro se litigation may make it more likely that those interests will be successfully vindicated. By contrast, the rule we have rejected guarantees that many claims that should be vindicated will never receive a full hearing in court.[13]

### III.

Accordingly, we **reverse** and vacate the judgment of dismissal in both actions. We **remand** and direct that the motion to amend be allowed in <u>Maroni</u> v. <u>Pemi-Baker Regional School District</u> and the parents be given a reasonable time to amend in the <u>Maroni</u> v. <u>Plymouth School District</u> action, in accordance with our opinion. No costs are awarded. So ordered.

---

[13]Because IDEA grants parents the right to sue, we do not reach the question of whether the parent or the child is the real party in interest in a parent's IDEA suit. Congress has granted parents a right of action under IDEA regardless of whether their IDEA suits present procedural or substantive claims. Given our resolution of the issue, we need not reach the common law next-friend theory either. Finally, because we find that the Maronis may proceed without counsel, we need not reach their request for reversal of the district court's denial of appointment of counsel.