**BRISTOL WARREN REGIONAL SCHOOL COMMITTEE, Mary V. Cabral, Chairperson, Tara K. Thibaudeau, Vice Chairperson, William O'Dell, Treasurer, Julie Kmieciak, Secretary, and Thomas J. DaPonte, William A. Estrella, Jr., Marjorie J. McBride, Deborah A. Redmond, and Paul Siva, Members,**

v.

**RHODE ISLAND DEPT. OF EDUCATION AND SECONDARY EDUCATIONS, Peter McWalters, in his capacity as the Commissioner of the Rhode Island Department of Elementary and Secondary Education, and Mr. and Mrs. C., the Parents of Student Catherine,**

v.

**Helen C. Barboza, Individually and in her official capacity as Superintendent of Bristol–Warren Regional School District, and Leslie Neubauer, Individually and in her official capacity as Director of Pupil Personnel of Bristol–Warren Regional School District.**

No. C.A. 02–349S.

United States District Court, D. Rhode Island.

March 18, 2003.

## DECISION AND ORDER

SMITH, District Judge.

### Introduction

· This matter is an appeal from an impartial due process hearing (the "Hearing") conducted pursuant to 20 U.S.C. § 1415, the Individuals with Disabilities Education Act ("IDEA")[1]. Mr. and Mrs. C. (the "Parents"), are the parents of a disabled child who attends Our Lady of Fatima School, a parochial school in Warren, Rhode Island. The Parents requested a due process hearing when the Local Education Authority ("LEA"), the Bristol Warren Regional School Committee ("BWRSC"), refused their request to provide their child, Catherine, with on-site resource services at Our Lady of Fatima. At the close of the Hearing, the hearing officer instructed the BWRSC to conduct an Individualized Education Plan ("IEP") meeting that should take into account the fact that resource services could be provided to Catherine at Our Lady of Fatima. The hearing officer's decision is vague as to whether the BWRSC must simply hold an annual IEP meeting at which on-site services may be discussed, or that an IEP meeting shall be held to determine how on-site services shall be provided to Catherine at Our Lady of Fatima.

On appeal, the BWRSC contends that the hearing officer's decision, which both parties interpret as directing the BWRSC to provide Catherine resource services at her parochial school, is contrary to current interpretations of relevant provisions of the IDEA. The Parents contend that the hearing officer's decision was correct and filed a counterclaim seeking attorneys' fees under the IDEA. The parties have filed cross-motions for summary judgment.

Robert B. Mann, Esq., Mann & Mitchell, Providence, RI, for Bristol Warren Regional School Committee.

Melissa F. Weber, Esq., Providence, RI, for Mr. & Mrs. C., Parents of Student Catherine.

Jennifer Louise Wood, Esq., Providence, RI, for RI Dept. of Education.

---

1. Section 1415(i)(2)(A) provides that any party aggrieved by a decision made at an IDEA impartial due process hearing may bring a civil action in a United States District Court seeking review of the administrative decision.

For the reasons that follow, the BWRSC's Motion for Summary Judgment is granted in part and denied in part. The Parents' Motion for Summary Judgment, as well as their Motion for Preliminary Injunction, are denied.

*Factual and Procedural Background* [2]

During the 2000–2001 school year, Catherine was a sixth grade student at Our Lady of Mt. Carmel, an elementary parochial school in Bristol, Rhode Island. Catherine received resource services from the BWRSC at her school from a nearby public school teacher who was within walking distance of Our Lady of Mt. Carmel.

For the 2001–2002 school year, Catherine enrolled at Our Lady of Fatima School in Warren, Rhode Island, which she continues to attend. Due to the change in schools, the BWRSC decided not to provide Catherine with "on-site" resource services at her new school, but did continue to make the services available to Catherine consistent with her Individualized Education Plan ("IEP") at other "off-site" locations. Despite BWRSC's continued efforts to provide services at off-site locations, it is unclear whether Catherine's IEP was modified to address changes in her IEP that resulted from her enrollment at a new school. BWRSC states that its practice is to provide on-site resource services at parochial schools only when the parochial schools are within walking distance of a public school. Because Our Lady of Fatima is one-and-a-half miles from the nearest public school, BWRSC determined that it was not within walking distance for a resource provider.

Starting in September of 2001, the Parents initially worked with BWRSC to provide services for Catherine at an off-site location. At first, Catherine was to attend three after-school sessions for one hour each day at the local public school. This schedule was later amended to two after-school sessions for one hour at a time. However, after two meetings, the Parents rejected the services because the schedule was interfering with Catherine's various other after-school and athletic programs. The Parents also claimed that the resource teacher was unprepared and that Catherine felt uncomfortable attending the sessions at a public school while dressed in her parochial school uniform. Although the Parents did finally meet with a number of individuals regarding Catherine, it is unclear whether the Parents and the LEA formally reevaluated her IEP at the time she became enrolled at Our Lady of Fatima.

Despite further negotiations between the Parents and BWRSC, the "Parents made it abundantly clear that they did not want Catherine's school day interrupted, nor did they want after school tutoring which would interfere with after school activities ... [t]hey wanted services supplied at Fatima, the school she was now attending." Hearing Officer's Decision at 5. The Parents' frustration in this regard was reinforced due to the fact that the BWRSC provides on-site resource services to children at two other parochial schools in its district.

Consequently, the Parents, upset with the lack of on-site resource services at Our Lady of Fatima, requested an impartial due process hearing pursuant to 20 U.S.C. § 1415 (requiring LEAs that receive financial assistance to maintain procedures and safeguards that ensure a child is provided a free appropriate public education). At the close of the Hearing, the hearing offi-

**2.** The facts are taken substantially from the Hearing Officer's Decision and the Administrative Record.

cer determined that the BWRSC was required to create an IEP for Catherine "taking into consideration that she may receive services at her present parochial school, at a time and frequency and with the content to be determined in accordance with the Regulations of the Board of Regents Governing the Special Education of Children with Disabilities." Decision of Hearing Officer at 7.

The BWRSC initiated this action seeking review of the administrative decision of the hearing officer. In turn, the Parents filed a counterclaim, seeking reimbursement of attorneys' fees they have incurred during the process. *See* 20 U.S.C. § 1415(i)(3)(A) and (B).

*Standard of Review*

■ A district court, when reviewing an administrative decision under the IDEA, is required to give "due deference" to a hearing officer's findings of fact. *Abrahamson v. Hershman,* 701 F.2d 223, 231 (1st Cir. 1983). However, a district court reviews a state administrative officer's rulings of law under the IDEA framework *de novo. See Ross v. Framingham School Comm.,* 44 F.Supp.2d 104, 111–12 (D.Mass.1999), *aff'd* 229 F.3d 1133 (1st Cir.2000). Therefore, this Court may properly disregard any rulings not in accordance with applicable statutes and precedents. *See id.* (citing *Abrahamson,* 701 F.2d at 231).

■ When the parties choose not to submit additional evidence to the district court, as is the case here, there is no new factual material to be considered. In that event, the cross-motions for summary judgment become a procedural device, by which the parties ask the judge to decide the case on the basis of the administrative record. *Hunger v. Leininger,* 15 F.3d 664, 669 (7th Cir.1994). This is not to be confused with the typical pre-trial summary judgment procedure in which the court must consider the facts in the light most favorable to the non-moving party. *Heather S. v. State of Wis.,* 125 F.3d 1045, 1052 (7th Cir.1997). Rather, under the IDEA, "[t]he party challenging the outcome of the ... administrative decision bears the burden of proof." *Id.*

*The Hearing Officer's Decision*

It is unclear, at best, what the hearing officer actually held in this case. At various points in the administrative decision, the hearing officer makes references to the BWRSC's obligation to conduct an IEP meeting to evaluate Catherine's needs. Without question, the law requires such an evaluation. *See* 20 U.S.C. § 1414(d)(4)(A). However, in her ruling, the hearing officer states that "an IEP is to be written ... taking into consideration that she may receive services at her present parochial school...." Hearing Officer's Decision at 7. It is unclear whether the hearing officer was simply ordering BWRSC to conduct a periodic IEP meeting as required by 20 U.S.C. § 1414(d)(4)(A), or whether the hearing officer was directing the BWRSC to take into account that Catherine could receive resource services at Our Lady of Fatima, effectively directing BWRSC to provide the services there.

Taking the hearing officer's final ruling in the context of the entire decision, it appears that the hearing officer was directing BWRSC to provide resource services to Catherine at Our Lady of Fatima. (This is clearly how the parties have interpreted her decision.) The weight of the hearing officer's decision discusses the arbitrariness and apparent inequality of the BWRSC's "walking distance rule" that prevents Catherine from receiving resource services on-site at Our Lady of Fatima. For example, the hearing officer states:

The LEA relies on the word MAY as a defense against providing services to students at Our Lady of Fatima school which the student in this case attends. She was provided on site services while she was attending Our Lady of Mt. Carmel during the school year 2000–2001. The LEA now asserts that notwithstanding the availability of those services to children at Mt. Carmel and another parochial school, St. Elizabeths [sic], these services are not available at Our Lady of Fatima.

In explaining why Fatima is excluded from on site services, the LEA points to an allegedly adopted policy of an unspecified date, never reduced to writing, [and] never communicated to the Parents. . . .

While the LEA argues that the walking distance rule is an acceptable and lawful policy, it would seem discriminatory for parochial school children who graduate from the elementary parochial schools within the district and then are denied service at the parochial high school within the district.

Since the LEA has elected to provide on site services to students with IEPs, they should be expected to provide those services fairly and equitably and without arbitrary distinctions.

Hearing Officer's Decision at 5–6. In light of this discussion, this Court interprets the hearing officer's decision as a ruling that the BWRSC's "walking district rule" violated the law, and is requiring the BWRSC to provide resource services at Our Lady of Fatima. It is this holding that the Court will now review under 20 U.S.C. § 1415(i)(2)(A).

*Analysis*

*BWRSC's Motion for Summary Judgment*

■ The IDEA requires states to provide some measure of special education and related resource services to children in private schools. *See* 20 U.S.C. § 1412(a)(10)(A) and (C). The Rhode Island Board of Regents has enacted regulations to ensure that Rhode Island schools comply with the mandates of the IDEA. *See* R.I. Gen. Laws § 16–24–2; 20 U.S.C. § 1400, *et seq.* The regulation at issue in this case provides that "[s]ervices provided to private school children with disabilities *may* be provided on-site at a child's private school, including a religious school." Regulation 300.456 (emphasis added). For the most part, this regulation echoes provisions of the IDEA that specify that "such services *may* be provided to children with disabilities on the premises of private, including parochial, schools, to the extent consistent with the law." [3] 20 U.S.C. § 1412(a)(10)(A)(i)(II) (emphasis added).

Numerous Circuit Courts have interpreted the permissiveness of the IDEA's language so as to allow only on-site services at a child's parochial school, but not requiring a school committee to provide services in such a fashion. The most recent Circuit Court to address this issue is *KDM v. Reedsport School Dist.,* 196 F.3d 1046 (9th Cir.1999). In *KDM,* the Ninth Circuit made a point to stress the uniformity with which courts have upheld the permissiveness of the IDEA. *See id.* at 1049 ("Every circuit that has considered whether the IDEA . . . requires services to be provided on site at a private school has concluded it does not."). In light of KDM's guidance, and after making an in-

---

**3.** The Federal regulation uses similarly permissive language: "Services provided to private school children with disabilities *may* be provided on-site at a child's private school, including a religious school, to the extent consistent with law." 34 C.F.R. § 300.456 (emphasis added).

dependent review of the relevant case law, this Court makes a similar determination. *See, e.g., Russman v. Board of Educ.*, 150 F.3d 219, 222 (2d Cir.1998) ("[T]he statute does not require a school district to provide on-site services to a disabled child who is voluntarily enrolled in a private school."); *Foley v. Special Sch. Dist.*, 153 F.3d 863, 865 (8th Cir.1998) (holding that parents had no right to a federal court decree mandating resource services be provided at a particular location); *Fowler v. Unified Sch. Dist. No. 259*, 128 F.3d 1431, 1436–37 (10th Cir.1997); *Cefalu v. East Baton Rouge Parish Sch. Bd.*, 117 F.3d 231, 233 (5th Cir.1997) ("We therefore hold unambiguously that the defendants were not legally obligated to provide an on-site sign language interpreter to the plaintiff at the private school.").

In this case, the hearing officer's decision was influenced by the fact that the BWRSC provides on-site resource services to two other children that attend parochial schools in its geographic district. The hearing officer held that:

> [I]t does mean, however, that students at Our Lady of Fatima school must have the same considerations that students at Our Lady of Mt. Carmel and St. Elizabeth's have. Students within the LEA's district are to be treated equitably in the provision of resource services.

Hearing Officer's Decision at 6. In the view of this writer, this reasoning is nothing less than an outright repudiation of every Circuit Court decision that has addressed the issue, based on nothing more than the hearing officer's sense of armchair equity. The hearing officer's "equity analysis" is wholly unsupported by the IDEA and the relevant regulations promulgated to effectuate its purpose. The statutes and the regulations clearly give the BWRSC the power to provide on-site resource services at all of the parochial

schools in its district, some of them, or none at all. That decision is totally within its discretion. This Court refuses the invitation (just as the hearing officer should have) to function as a super school board, second guessing the policy choices of administrators charged with facilitating the education of disabled students that live within the BWRSC district. The only question for the hearing officer and this Court is did BWRSC's conduct comply with federal law? This Court determines that it did, and the inquiry ends there.

■ Notwithstanding the foregoing, the BWRSC should have conducted an IEP meeting when Catherine changed schools in September of 2001 in order to evaluate her educational needs. From the record submitted, it appears it did not do so. Therefore, if it has not already done so, the BWRSC is ordered to evaluate Catherine's IEP in order to ensure that she is provided resource services that comply with the IDEA and its regulatory framework. At the IEP meeting, however, the BWRSC is not obligated to consider providing on-site resource services at Our Lady of Fatima, though it may certainly do so if it chooses.

*The Parents' Motion for Summary Judgment*

■ As a counterclaim, the Parents seek reimbursement for their attorneys' fees pursuant to 20 U.S.C. § 1415(i)(3)(A) and (B). The statute provides:

> In any action or proceeding brought under [section 1415 of the IDEA], the court, in its discretion, may award reasonable attorneys' fees as part of the costs to the parents of a child with a disability who is the prevailing party.

20 U.S.C. § 1415(i)(3)(B). In order to determine when a party prevails for purposes of the IDEA, the First Circuit has held that a prevailing party is "any party

who 'succeed[s] on any significant issue ... which achieves some of the benefits plaintiffs sought in bringing suit.'" *Maine School Administrative District No. 35 v. Mr. And Mrs. R.*, 321 F.3d 9, 14–15 (1st Cir.2003) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983)). The party's success must be more than "a hollow victory," and purely technical or *de minimis* victories do not create prevailing parties for purposes of § 1415(i)(3)(B) of the IDEA. *See id.* at 15–16.

In this case, the Parents' pleadings and testimony before the hearing officer clearly indicate that their overall goal in initiating this dispute at the administrative level was to have resource services provided to Catherine at Our Lady of Fatima. Because this Court holds that the Parents cannot compel the BWRSC to provide services on-site, it has not prevailed for purposes of the fee-shifting provision of the IDEA. While this Court does hold that the Parents are entitled to an annual IEP meeting to assess Catherine's education plan, such a ruling does not provide the Parents with a significant victory to warrant an award of attorneys' fees. Moreover, it is not even clear from the record and the pleadings that the Parents were claiming that BWRSC was refusing to have such a meeting. The parties have been at logger-heads over the location of services, and this litigation has been driven by that issue solely. This Court's mandate of a meeting to conduct an annual review of Catherine's IEP is little more than a technical victory and *de minimis* "in the

context of the Parents' broader goals in this case." *Kathleen H. v. Mass. Dept. of Education*, 154 F.3d 8, 15 (1st Cir.1998) (quoting *Monticello Sch. Dist. No. 25 v. George L.*, 102 F.3d 895, 908 (7th Cir.1996) (affirming denial of attorneys' fees despite changes to IEP ordered by hearing officer)).

■ The Parents also appear to make an equal protection-like argument in their papers in support of their Motion for Summary Judgment. However, the Parents cite no authority in support of the proposition that the BWRSC's decision to provide on-site resource services at some parochial schools, but not others, violates the Fourteenth Amendment.[4] Therefore, to the extent they make one, the Parents' equal protection argument also fails.

*Conclusion*

For the reasons stated above, the Bristol Warren Regional School Committee's Motion for Summary Judgment is GRANTED; Mr. and Mrs. C. and Catherine's Motion for Summary Judgment and Motion for Preliminary Injunction is DENIED; BWRSC is hereby ordered to conduct, if it has not already done so, a meeting with Mr. and Mrs. C. to conduct the annual review of Catherine's IEP in accordance with the discussion contained herein.

IT IS SO ORDERED.

---

4. In order to make a valid equal protection argument, the Parents would essentially need to allege that BWRSC's decision to provide educational resource services at some parochial schools and not at others violates the Fourteenth Amendment. A governmental classification of individuals based on their status as non-elementary parochial school students is not an inherently suspect classifica-

tion, and therefore BWRSC would only have to show that any differences in services are the result of a decision rationally related to its interest in applying the requirements of the IDEA. BWRSC's "walking district rule" would clearly meet this standard; in other words, the policy is not irrational and therefore it passes constitutional muster.