CLAUDIA C–B, et al., Plaintiffs

v.

**BOARD OF TRUSTEES OF PIONEER VALLEY PERFORMING ARTS CHARTER SCHOOL, et al., Defendants.**

C.A. No. 07–30094–MAP.

United States District Court,
D. Massachusetts.

March 20, 2008.

Bryan K. Clauson, Springfield, MA, for Plaintiffs.

Edward D. Etheredge, Etheredge & Steuer, P.C., Northampton, MA, James S. Whitcomb, Office of Attorney General, Springfield, MA, for Defendants.

*MEMORANDUM AND ORDER RE: REPORT AND RECOMMENDA-TION WITH REGARD TO CROSS–MOTIONS FOR SUMMARY JUDG-MENT (Docket Nos. 8, 11, 29 & 33)*

PONSOR, District Judge.

Plaintiffs, parents of a student at Defendant Pioneer Valley Performing Arts Charter School ("PVPA"), have brought this action to challenge the May 7, 2007 decision by a hearing officer at the co-defendant state Bureau of Special Education Appeals ("BSEA"). Two of the three counts of the complaint are offered pursuant to the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400, *et seq.* (Counts I and II), and the

third contends that the PVPA's decisions with regard to the student's education, as generally affirmed in the decision of the BSEA's hearing officer, violated the student's due process rights under the United States Constitution (Count III).

Plaintiffs and both Defendants moved for summary judgment, and the motions were referred to Chief Magistrate Judge Kenneth P. Neiman for report and recommendation.

On February 12, 2008, Judge Neiman issued a detailed Report and Recommendation, finding that the BSEA hearing officer's decision was well supported both in fact and in law, and recommending that Defendants' motions be allowed and Plaintiffs' motion be denied, with a minor exception. The exception was Judge Neiman's recommendation that, based on their fragmentary success before the BSEA, Plaintiffs should receive one-eighth of their claimed attorney's fees, or $4,165.00.

Plaintiffs thereafter filed a lengthy objection to the Report and Recommendation, continuing to maintain that the hearing officer's decision violated the student's rights under the IDEA and the federal Constitution. Defendants replied to these objections, urging the adoption of Judge Neiman's Report, but objecting to the modest award of attorney's fees to Plaintiffs.

■ For the reasons set forth below, the court will adopt Judge Neiman's substantive recommendation to the effect that the hearing officer's decision constituted no violation of any of the student's rights under the IDEA or the due process clause of the U.S. Constitution. The court will decline to adopt the recommendation with regard to the modest award of attorney's fees. The additional academic support ordered by the hearing officer, in the form of a consultant with expertise related to the student's disability, was not the result of

any initiatives by Plaintiffs. Indeed, the additional consultation might well have been obtained without litigation if Plaintiffs had cooperated in the development of the student's 2006–2007 Individualized Education Plan ("IEP"). Under the circumstances, an award of any fees to Plaintiffs would be unfair and improper.

This memorandum is the third to address the substantive issues raised in this case. Both the hearing officer's written decision and Judge Neiman's Report and Recommendation offer detailed, meticulous, and intelligent discussions of the issues in this case, and may be reviewed as a backdrop to this decision. Because of the excellent work previously done, this memorandum need not be lengthy.

The PVPA is a public charter school located in South Hadley, Massachusetts with approximately 400 students in grades 7 through 12. It emphasizes the performing arts within the context of a demanding academic curriculum. Dkt. No. 33, Report and Recommendation ("R & R") at 3. Hearing Officer's Decision, attached to Complaint, Dkt. No. 1, at 5.

One aspect of the school's educational philosophy is the absence of letter or number grades and the employment instead of what the school calls a "competency-based" analysis of a student's academic progress. This policy preexisted the student's enrollment in the school, and Plaintiffs were aware of it when they chose to enroll the student there.

A central thread in this litigation has been Plaintiffs' vigorous contention that the school's educational philosophy, as embodied in the competency-based system, somehow worked a violation of the student's rights under the IDEA and even under the due process clause of the U.S. Constitution. Plaintiffs' objections to the Report and Recommendation condemn the

Report's conclusion "that there exists no compelling factual argument that PVPA's competency-based system should have been ordered changed. . . ." Dkt. No. 34 at 2. Throughout the litigation, the focus has tended to drift away from the needs of the student under the IDEA into policy-based arguments about the appropriateness of the school's educational philosophy and particularly, its approach to grading and promotion of students. Neither the IDEA, nor the Fourteenth Amendment, provides an appropriate instrument for attacking the general academic approach of a school, particularly a charter school such as PVPA, which almost by definition offers an alternative to traditional academics.

The student in this case has been diagnosed with Attention Deficit Hyperactivity Disorder ("ADHD"), as well as an "atypical learning disorder." Hearing Officer's Decision at 4. He has significant academic strengths, however, and is an impressive musician with a facility in playing at least four instruments. *Id.* His attentional difficulties do interfere with reading comprehension, and he suffers from distractability, slow processing of information, procrastination, resistance to doing homework, and failure to hand in assignments on time or at all. *Id.* The student's difficulties, as well as strategies for addressing them, were well assessed by a private neuropsychological specialist, Heather Hornik. Most of her recommendations were incorporated in the 2005–2006 IEP, which was accepted by the parents in early October 2005. The IEP contemplated a spectrum of weekly supports to the student, both inside and outside the classroom.

Although the student had some difficulties, he did succeed in passing all his subjects for the 2005–2006 academic year, his eighth grade. The school recognized that for the student's ninth grade, additional support was needed and made proposals to this effect as part of the IEP for that year. The parents rejected the IEP, focusing, as noted above, especially on the school's competency-based approach to the assessment of academic achievement.

The hearing officer noted that the absence of "measurable goals" in the 2005–2006 IEP did interfere to some extent with the accurate *assessment* of the student's progress, but did *not* lead to a denial of a free and appropriate public education ("FAPE"). *Id.* at 14. Moreover, the hearing officer found that the 2006–2007 IEP could be improved and made appropriate for the student with the addition of regular consultations with a professional with expertise in education of students with significant executive functioning disorders. The hearing officer concluded, with strong support in the record, that "parents simply have not demonstrated that PVPA's policy regarding credit and promotions deprived student of FAPE in violation of the IDEA. . . ." *Id.* at 15.

As the Report and Recommendation indicates, the hearing officer's detailed memorandum carefully addressed all the arguments offered by the parents. The court's task in an IDEA case is to receive the record of the administrative hearings, give the hearing officer's decision due weight, and determine what relief is appropriate based upon a preponderance of the evidence standard. R & R at 10.

No fair reading of the administrative record, the hearing officer's decision, and Judge Neiman's Report and Recommendation could reach any conclusion other than that Plaintiffs have failed to demonstrate their entitlement to any relief under either the IDEA or the due process clause of the Constitution. Plaintiffs' policy disagreement with the school regarding its competency-based educational philosophy is particularly inappropriate as a focus for what

should be student-based litigation. In all other respects, Plaintiffs' objections amount to no more than a disagreement with the BSEA decision, with the clear weight of evidence favoring Defendants.

As to the award of attorney's fees, the modest relief afforded by the hearing officer in the form of the recommended consultant constituted at best *de minimis* success on the part of Plaintiffs. Moreover, this extra help was not the focus of Plaintiffs' requests for relief and might well have been provided to them had Plaintiffs participated in the development of the IEP for the 2006–2007 academic year.[1] Under these circumstances, as noted above, the court will decline to adopt the portion of the Recommendation awarding Plaintiffs a fraction of their attorney's fees.

Based on the foregoing, upon *de novo* review, the Report and Recommendation of Chief Magistrate Judge Kenneth P. Neiman (Dkt. No. 33) is hereby adopted, with one exception. Plaintiffs' Motion for Summary Judgment (Dkt. No. 8) is hereby DENIED. The PVPA's Motion for Summary Judgment (Dkt. No. 11) is hereby ALLOWED, and the BSEA's Motion for Summary Judgment (Dkt. No. 29) is hereby ALLOWED. The court declines to adopt the portion of the Report and Recommendation awarding Plaintiffs' counsel attorney's fees.[2] The clerk is ordered to enter judgment in favor of Defendants on all counts. This case may now be closed.

It is So Ordered.

---

1. The Court of Appeals has recently emphasized the collaborative aspect of the IEP process, which may not be frustrated by parents' "refusal to cooperate." *C.G. v. Five Town Cmty. Sch. Dist.*, 513 F.3d, 279, 285–86 (1st Cir.2008).

2. The PVPA's request for an award of attorney's fees from Plaintiffs appears to be inconsistent with the IDEA, 20 U.S.C. § 1415(i)(3)(B), which states that in an action under the IDEA "the court, in its discretion,

*REPORT AND RECOMMENDATION REGARDING CROSS MOTIONS FOR SUMMARY JUDGMENT*
*(Docket Nos. 8, 11 and 29)*

NEIMAN, United States Chief Magistrate Judge.

This case, brought by the parents of a student at the Pioneer Valley Performing Arts Charter School ("PVPA") in South Hadley, Massachusetts, follows a May 7, 2007 decision by a hearing officer of the Bureau of Special Education Appeals of the Massachusetts Department of Education ("BSEA"). The parents (hereinafter "Plaintiffs") have sued both PVPA and the BSEA (together "Defendants") in a three count complaint.[3] Two counts are in the nature of an appeal, *i.e.*, Plaintiffs allege that a part of the hearing officer's decision violated either their son's right to a free and appropriate public education ("FAPE"), as protected by the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq.* (Count II), or his due process rights guaranteed by the United States Constitution (Count III). A third count alleges that, with respect to a separate part of the decision, Plaintiffs are a "prevailing party" and, hence, entitled to an award of attorney's fees (Count I).

Soon after filing their complaint, Plaintiffs moved for summary judgment. Defendants, in turn, compiled and filed the five-volume administrative record as well

may award reasonable attorney's fees as part of the costs to the *parents* of a child with a disability who is the prevailing party." (Emphasis supplied). Nothing in the statute recognizes a prevailing school's right to claim fees from a parent.

3. The City of South Hadley was also an original defendant, but Plaintiffs voluntarily dismissed the city on July 27, 2007. (Document No. 18.)

as their own cross motions for summary judgment. All three motions were then referred to this court for a report and recommendation. *See* 28 U.S.C. § 636(b)(1)(B).

Although the file is large, the court deems the legal issues raised by the cross motions easy to resolve. In the court's view, Plaintiffs have neither carried their burden of showing that the hearing officer's decision ought to be overturned nor prevailed sufficiently so as to be entitled to attorney's fees, except in one limited respect. Accordingly, for the reasons which follow, the court will recommend that: (1) Plaintiffs' motion for summary judgment be denied, except for an order that PVPA pay Plaintiffs $4,165 in attorney's fees; (2) PVPA's motion for summary judgment be allowed, except for the $4,165 payment; and (3) BSEA's motion for summary judgment be allowed.

## I. BACKGROUND

Following the parties' lead, the court takes its background from the undisputed findings of fact in the hearing officer's May 7, 2007 Decision (hereinafter "Decision").[4] *See Hampton Sch. Dist. v. Dobrowolski*, 976 F.2d 48, 52 (1st Cir.1992) (noting that "the court must recognize the expertise of" the hearing officer "and consider carefully administrative findings") (citations and internal quotation marks omitted). *See also Lenn v. Portland Sch. Comm.*, 998 F.2d 1083, 1086 (1st Cir.1993) (noting that in the usual course, the court's facts are taken from the administrative record). Several additional facts from the Decision are addressed in the court's discussion below.

At all relevant times, Plaintiffs' son attended PVPA, a public charter school located in South Hadley. (Decision Facts ¶ 3; Complaint at 4 ¶ 2.) PVPA serves approximately 400 students in grades 7 through 12 and its stated mission is to "offer students intensive exposure to the performing arts, within the context of an excellent college preparatory curriculum." (Decision Facts ¶ 3.) As a college preparatory school, PVPA has graduation requirements that "far exceed the Massachusetts state standards," *i.e.*, students must pass three or four years in each core academic course. (*Id.* ¶ 4.) Students must also complete a certain number of hours in a performing arts discipline and two performing arts internships as well as participate in various service projects. (*Id.*)

Rather than assigning letter grades, PVPA uses a competency-based system to determine whether a student receives credit for a course and is eligible for promotion to the next course or grade. (*Id.* ¶ 5.) Under this system, PVPA breaks down a course's content into component parts which are made into a detailed list of discrete skills and substantive concepts known as "goals and objectives" or "benchmarks." (*Id.*) Every student enrolled in the course is given this list at the beginning of the school year. (*Id.*)

To receive credit for any course, a student must complete every benchmark at the "competency" level, *i.e.*, he must demonstrate an understanding of the concept or skill via approximately "B" level work or better. (*Id.* ¶ 6.) If a student does not show such competency, he receives an "incomplete" until he does and must retake a course if he does not complete the goals and objectives by the end of the school year. (*Id.*) Students are to be given help in achieving competency and may demonstrate their understanding of the course materials in a variety of ways, including

---

4. A copy of the Decision is located at pages 277–97 of Document No. 23, the Administrative Record Documents Volume I (hereinafter "A.R., Vol. I"); the hearing officer's findings of fact (hereinafter "Decision Facts") are located at pages 281–90 therein.

through tests, quizzes, written work, oral presentations or discussions with teachers. (*Id.*)

In addition to achieving competency in course content, students must comply with the so-called "80% rule" in order to receive course credit. (*Id.* ¶ 7.) According to this rule, students must complete and hand in at least eighty percent of homework assignments on or before the due date set by the teacher or an agreed-upon extension period. (*Id.*) At any given time, for any course, PVPA deems a student to be working at either "full credit" or "no credit," depending on whether, at that moment, he has timely handed in eighty percent of his assignments and is demonstrating competency to the satisfaction of the teacher. (*Id.* ¶ 8.)

As an alternative to "full credit" or "no credit," a teacher may grant a student "basic credit" for a course if the student appears to be working to the best of his ability but simply cannot hand in eighty percent of the assignments on time. (*Id.* ¶ 9.) To receive basic credit, the student must achieve competency at the "C" level on all benchmarks and also must turn in at least sixty percent of assignments on time. (*Id.*) If a student is allowed to work toward basic credit and meets these performance criteria, he will pass the course. (*Id.*) The decision to allow basic credit in any given circumstance is made by the teacher after consultation with administrators. (*Id.*)

Students, like Plaintiffs' son, who have individualized education programs ("IEPs") do not automatically work toward basic credit in any course. (*Id.* ¶ 10.) Rather, PVPA intends that such students will work toward full credit with the help of accommodations, specialized instruction, multiple opportunities to master content, and the ability to demonstrate understanding of course material in a variety of ways. (*Id.*) It appears that the primary model of

service delivery to special education students is via consultation to classroom teachers and an academic support room where students can go for help as needed. (*Id.* ¶ 11.) There are no substantially separate classrooms at PVPA at the high school level. (*Id.*)

In the fall of 2004, Plaintiffs' son enrolled in PVPA as a seventh-grader. He arrived with, and apparently continues to have, a documented diagnosis of Attention–Deficit/Hyperactivity Disorder ("ADHD") and executive functioning difficulties. (*Id.* ¶ 12.) In September of 2005, Plaintiffs' son, then entering the eighth grade, was issued an IEP which contained goals and objectives in reading comprehension, writing and math, as well as organization and study skills. (*Id.* ¶ 18.) The IEP was the last and only IEP accepted by Plaintiffs and, as such, has been designated by the parties as the "stay put" IEP. (*Id.* ¶ 22.)

By March of 2006, with their son facing the prospect of "non-promotion," Plaintiffs requested that his stay put IEP be revised. (*Id.* ¶ 29.) In response, PVPA proposed a new IEP which offered two main changes: (1) the reading comprehension goal was dropped and treated as an accommodation, and (2) pull-out academic support services were reduced from five to four sessions per week. (*Id.* ¶ 34.) The parties, however, were unable to come to an agreement. (See *id.* ¶¶ 30–36.) Nevertheless, Plaintiffs' son did a tremendous amount of work toward the end of eighth grade and managed to pass his courses. (*Id.* ¶ 38.) Accordingly, in September of 2006, Plaintiffs' son started ninth grade under the 2005–2006 stay put IEP. (*Id.*)

Throughout the fall of 2006, Plaintiffs' son struggled with schoolwork as a result of his continued difficulties with attention and organization. (*Id.* ¶¶ 39–45.) By November of 2006, Heather Hornik, Ph.D., a

neuropsychologist retained by Plaintiffs, opined that PVPA's eighty percent rule was of little use to Plaintiff's son because he "does not have the skills for planning and organization that would enable him to anticipate in advance whether he requires extended time." (*Id.* ¶¶ 14, 46.) Accordingly, Dr. Hornik recommended "an exception to the 80% rule that will permit [Plaintiffs' son] to work at his level." (*Id.* ¶ 46.) Still, however, the parties were unable to agree upon a revised IEP. (*Id.* ¶ 47.)

In August of 2006, it should be noted, Plaintiffs filed a request for a hearing with the BSEA. (A.R. Vol. I at 278.) Five months later, in early December of 2006, Plaintiffs set forth the relief they wanted via a number of different "requests for relief." (See Document No. 24 ("A.R.Vol. II") at 558–60.) Lengthy evidentiary hearings were held on December 14, 2006, January 4, 2007, and January 14, 2007. (*Id.*) Both parties were represented by counsel and had the opportunity to examine and cross-examine witnesses and introduce documentary evidence. (*Id.*)

In her comprehensive, twenty-page Decision, the hearing officer sorted Plaintiffs' multiple requests for relief into what PVPA now casts as eight issues and conclusions. First, the hearing officer considered whether the stay put IEP was fully implemented during 2006–2007. As to that issue, the hearing officer concluded that even though PVPA "acknowledged that the [stay put] IEP did not contain measurable goals," Plaintiffs did not "demonstrate[ ] that this led to a denial of FAPE." (A.R. Vol. I at 291.)

Second, the hearing officer considered whether the IEP proposed by PVPA in March of 2006 was appropriate as written or could be made appropriate with modifications. On that issue, the hearing officer concluded that the proposed IEP "could be made appropriate for [Plaintiffs' son] with the addition of regular consultation by a professional with expertise in education of students with significant executive functioning disorders." (*Id.*) Despite this conclusion—which forms the basis of Plaintiffs' request for attorney's fees (see *infra*)—the hearing officer went on to state that Plaintiffs had "not carried the burden of proof that [their son] requires co-taught classes in all core subjects." (*Id.*)

Third, the hearing officer considered whether PVPA committed procedural violations in its manner of determining whether Plaintiffs' son was eligible for basic credit. As to that issue, the hearing officer concluded that Plaintiffs had "simply not demonstrated that PVPA's policy regarding credit and promotions deprive[d] [their son] of FAPE in violation of the IDEA, or prevent[ed] him from benefiting [sic] from PVPA's program in violation of [section 504 of the Rehabilitation Act], such that [he] must be granted an exemption from the 80% rule and/or be granted 'basic credit.'" (*Id.* at 292.)

Fourth, the hearing officer considered whether PVPA had accurately assessed Plaintiffs' son's progress toward achieving the goals and objectives stated in his IEP and the general curriculum or whether PVPA's credit and promotion policies (or other factors) have prevented such assessment. With regard to that issue, the hearing officer stated that "during 2005–2006, it was difficult [to] determine whether [Plaintiffs' son] was making progress towards achieving IEP goals because the only measurement of such was discussion of his progress (or lack thereof) in the general curriculum." (*Id.* at 293.)

Fifth, the hearing officer considered whether PVPA had applied its credit and promotion policies to Plaintiffs' son in a discriminatory manner in violation of sec-

tion 504 of the Rehabilitation Act. As to that issue, the hearing officer concluded that Plaintiffs had "simply not demonstrated that PVPA's policy regarding credit and promotions deprive[d] [their son] of FAPE in violation of the IDEA, or prevent[ed] him from benefiting [sic] from PVPA's program in violation of [section 504 of the Rehabilitation Act], such that [he] must be granted an exemption from the 80% rule and/or be granted 'basic credit.'" (*Id.* at 292.)

Sixth, the hearing officer considered whether Plaintiffs were entitled to an order directing PVPA to change any aspect of its credit or promotion policies as applied to their son. On that issue, the hearing officer concluded that "[i]t is well settled that although school districts must provide eligible students with access to the general curriculum, and any accommodations that might be needed to make access possible, policies on grading, promotion, retention, credit, and the like generally are within the scope of the district's authority." (*Id.*)

Seventh, the hearing officer considered whether Plaintiffs were entitled to compensatory services. As to that issue, the hearing officer noted that Plaintiffs "accepted the 2005–2006 IEP, at least until the partial rejection of same in March 2006, and also elected to implement it as their 'stay put' IEP for the majority of 2006–2007." (*Id.* at 293.) "[T]herefore," the hearing officer concluded, "they are foreclosed from claiming compensatory services during the period that this IEP has been in effect." (*Id.*)

Eighth and finally, the hearing officer considered whether Plaintiffs were entitled to reimbursement for private tutoring services. Regarding that issue, the hearing officer concluded that Plaintiffs had "simply not met their burden of showing that services have been absent or inappropriate

such that PVPA would be liable for private tutoring that they obtained unilaterally." (*Id.* at 294.) "Moreover," the hearing officer continued, Plaintiffs "presented no evidence regarding the appropriateness of the tutoring." (*Id.*)

## II. SUMMARY JUDGMENT STANDARDS

"Summary judgment is warranted 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Uncle Henry's, Inc. v. Plaut Consulting Co.*, 399 F.3d 33, 41 (1st Cir.2005) (quoting Fed. R. Civ. Pro. 56(c)). Cross motions for summary judgment, used here as a vehicle for resolving an IDEA-based dispute, *see Norton Sch. Comm. v. Mass. Dep't of Educ.*, 768 F.Supp. 900, 904 (D.Mass.1991), do not alter the basic summary judgment standard, but require the court to determine whether either party deserves judgment as a matter of law on facts that are not disputed. *Adria Int'l Group, Inc. v. Ferre Dev., Inc.*, 241 F.3d 103, 107 (1st Cir.2001).

## III. DISCUSSION

As noted at the outset, two main issues are raised by the cross motions for summary judgment: (1) whether one part of the hearing officer's Decision violated either Plaintiffs' son's right to a FAPE or his due process rights and (2) whether, with respect to a separate part of the Decision, Plaintiffs are a "prevailing party" and, hence, entitled to an award of attorney's fees. Addressing each issue in turn, the court believes that Plaintiffs have neither carried their burden of showing that the Decision ought to be overturned nor prevailed sufficiently so as to be entitled to attorney's fees, except in one limited respect.

## A. *Plaintiffs' Appeal*

The appeal portion of Plaintiffs' motion for summary judgment has two parts. Plaintiffs first contend that the hearing officer erred by not ordering PVPA to provide grades, in terms of percentages, on all of their son's work in violation of the IDEA. Second, Plaintiffs argue that PVPA's custom and policy of failing to follow its written grading policy or provide their son with percentage grades violated their son's rights to constitutional due process. The court will analyze (and ultimately recommend rejection of) these issues *seriatim* after first describing the significant legal threshold Plaintiffs have to surmount in order to succeed on their appeal.

### 1. *Standard of Review*

In an action brought under the IDEA, the court "(i) shall receive the records of the administrative proceedings; (ii) shall hear additional evidence at the request of a party; and (iii) basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate." 20 U.S.C. § 1415(i)(2)(c). The court does not, however, have "an invitation ... to substitute [its] own notions of sound educational policy for those of the school authorities which [it] review[s]." *Board of Education v. Rowley*, 458 U.S. 176, 206, 102 S.Ct. 3034, 73 L.Ed.2d 690 (1982). Rather, the court must give the state administrative proceeding "due weight." *Id. Accord Lenn*, 998 F.2d at 1087.

To accomplish its task, the court must apply "an intermediate standard of review[,] ... a standard which, because it is characterized by independence of judgment, requires a more critical appraisal of the agency's determination than clear-error review entails, but which, nonetheless, falls well short of complete *de novo* review." *Lenn*, 998 F.2d at 1086 (citation

omitted). *See also Ross v. Framingham Sch. Comm.*, 44 F.Supp.2d 104, 111 (D.Mass.) (noting First Circuit's caution that reviewing courts must not "turn a blind eye to administrative findings or ... discard them without reason") (citation and internal quotation marks omitted), *aff'd without opinion*, 229 F.3d 1133, 2000 WL 995178 (1st Cir.1999). This standard must be applied against the traditional summary judgment standard. *Norton*, 768 F.Supp. at 904.

### 2. *Plaintiffs' IDEA Argument*

█ Plaintiffs' IDEA argument can be dealt with fairly quickly since, in the court's estimation, the hearing officer did not err by failing to order PVPA to provide grades, in percentages, on Plaintiffs' son's work. Thus, for the following factual and legal reasons, the court believes that the hearing officer's Decision with respect to Plaintiffs' IDEA argument easily survives judicial scrutiny under the intermediate standard of review.

First, Plaintiffs offer no challenge to the following facts: (1) that PVPA, rather than assigning letter grades or percentages, has long used a competency-based system to determine whether a student receives credit for a course and is eligible for promotion to the next course or grade; (2) that under this system, PVPA breaks down the content of every course into component parts, which are made into a detailed list of discrete skills and substantive concepts known as "goals and objectives" or "benchmarks"; (3) that to receive credit for any course, a PVPA student must complete every benchmark at the "competency" level, *i.e.*, he must demonstrate an understanding of the concept or skill via approximately "B" level work or better; (4) that students must also comply with the 80% rule in order to receive "full credit"; and (5) a teacher may grant a student

"basic credit" for a course if the student appears to be working to the best of his ability, but simply cannot hand in eighty percent of the assignments on time. Absent any counter-argument by Plaintiff, the court must agree with the hearing officer that PVPA's competency-based system is "flexible" and "consistent with the underlying philosophy of PVPA that students should master the subject matter of one course before moving on to the next." (A.R. Vol. I at 292.) In short, there exists no compelling factual argument that PVPA's competency-based system, at least under the facts of this case, should have been ordered changed.

To be sure, Dr. Hornik, Plaintiffs' neuropsychologist, opined that PVPA's competency-based system was of little use to Plaintiffs' son because he "does not have the skills for planning and organization that would enable him to anticipate in advance whether he requires extended time." (*Id.* at 290.) Plaintiffs, however, provide virtually nothing else to counter the hearing officer's contrary conclusion, namely, that PVPA's grading and promotion policies, while at times "difficult to reconcile with IEP goals and objectives, did *not* deprive [Plaintiffs' son] of a free and appropriate education or result in disability-based discrimination." (*Id.* (emphasis added).)

In addition, even though the hearing officer candidly acknowledged that "deficiencies in the [stay put] IEP in combination with the PVPA credit and promotion policies did interfere with accurate assessment of [Plaintiffs' son's] progress under his IEP and hence may have impaired appropriate adjustments to his services during eighth grade," Plaintiffs have not shown, as the hearing officer found, "that this led to a denial of FAPE." (*Id.* at 291.) According to the hearing officer, PVPA's "flexible" policy "can incorporate the pro-

visions of an IEP" in a number of ways. (*Id.* at 292.) "For example," the hearing officer stated, "a student could use an oral presentation to show knowledge of a subject if s/he has a disability affecting written work." (*Id.*) The hearing officer also noted that the policy allows for a student "to retake tests, redo assignments, meet formally and informally with teachers [and] obtain extensions of deadlines." (*Id.*) "Moreover, and perhaps most importantly," the hearing officer found that if a student "cannot earn credit in a course within the requisite time, either because of the 80% rule or because he has not mastered the subject matter, he would not be asked to leave PVPA." (*Id.*) "Rather, he simply would have to retake the course." (*Id.*)

Second, as to the law, Plaintiffs argue that the competency-based system just described—presumably as applied to their son—is undermined by federal case law. However, they cite just a single decision, *North Reading Sch. Comm. v. BSEA*, 480 F.Supp.2d 479 (D.Mass.2007), which does not even support their argument. At best, in one paragraph of the opinion concerning the standard to be used in evaluating an IEP, District Judge Reginald C. Lindsay briefly mentions the well-settled proposition "that an IEP must be 'reasonably calculated to enable the child to achieve passing marks and to advance from grade to grade.'" *Id.* at 489 (quoting *Rowley*, 458 U.S. at 204, 102 S.Ct. 3034). But his opinion does not analyze (or otherwise mention) "passing marks" and nothing in it can be read to *require* that a school measure a student's accomplishment by a percentage-based grade, as Plaintiffs appear to be advocating here.

At bottom, given the intermediate standard of review which must be applied to the Decision, the court is compelled to agree with the hearing officer that Plain-

tiffs have "simply not demonstrated that PVPA's policy regarding credit and promotions deprive[d] [their son] of [a] FAPE in violation of the IDEA, or prevent[ed] him from benefiting [sic] from PVPA's program." (*Id.* at 292.) Accordingly, the court will recommend that summary judgment enter in Defendants' favor on the IDEA portion of Plaintiffs' appeal.

### 3. *Plaintiffs' Due Process Argument*

■ Plaintiffs' due process argument— that PVPA's failure to provide their son with percentage grades violated their son's rights to constitutional due process—is even more tenuous. It is well established that a claim for denial of a constitutionally protected property or liberty interest must first assert the interest protected. *See Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). "[A]bsent a state law provision to the contrary," however, protected interests do "not include entitlement to particular aspects of the educational program." *Casey v. Newport Sch. Comm.,* 13 F.Supp.2d 242, 246 (D.R.I.1998). *See also Hebert v. Ventetuolo,* 638 F.2d 5, 6 (1st Cir.1981) (right to education does not include right to participate in interscholastic activities); *Arundar v. De Kalb County Sch. Dist.,* 620 F.2d 493, 494 (5th Cir.1980) (right to education does not include right to specialized curriculum); *Boynton v. Casey,* 543 F.Supp. 995, 1001 (D.Me.1982) (entitlement to public education "does not necessarily encompass every facet of the educational program"). Here, insofar as Plaintiffs are simply challenging a particular aspect of PVPA's educational program, their due process argument stumbles at the starting gate.

Granted, Plaintiffs also assert that due process was abridged by PVPA's alleged "custom and policy of failing to follow its written grading policy." But again, that assertion is not supported by any compelling factual argument. Moreover, Plaintiffs supply no supportive case law, other than *Goss v. Lopez,* 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975), the seminal Supreme Court decision which held that public education is "a property interest which is protected by the Due Process Clause and which may not be taken away for misconduct without adherence to the minimum procedures required by that Clause." *Id.* at 574, 95 S.Ct. 729. That broad proposition hardly reaches down into the minutiae of Plaintiffs' claims. The court, therefore, has little choice but to recommend that summary judgment be granted in Defendants' favor with respect to the due process portion of Plaintiffs' appeal.

### B. *Plaintiffs' Request for Attorney's Fees*

As indicated, Plaintiffs also seek payment of their attorney's fees as a prevailing party. For the reason that follow, the court believes that Plaintiffs are entitled to only a relatively small portion ($4,165) of their claimed fees.[5]

The IDEA provides that "[i]n any action or proceeding brought under [20 U.S.C. § 1415], the court, in its discretion, may award reasonable attorneys' fees as part of the costs to the parents of a child with a disability who is the prevailing party." 20 U.S.C. § 1415(i)(3)(B). As with many fee disputes, this one turns on the definition of "prevailing party." However, unlike with some others—and PVPA's argument to the contrary—the instant dispute is not complicated by *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.,* 532 U.S. 598, 121 S.Ct. 1835,

---

**5.** The BSEA asserts, without objection, that if any such fees are warranted, such fees would be due from PVPA, not the BSEA.

149 L.Ed.2d 855 (2001), which held that "there must be 'judicial *imprimatur* on the change'" in the parties' legal relationship before fees may be awarded. *Smith v. Fitchburg Pub. Sch.,* 401 F.3d 16, 22 (1st Cir.2005) (quoting *Buckhannon,* 532 U.S. at 605, 121 S.Ct. 1835). As Magistrate Judge Collings observed in a case involving an appeal of a BSEA decision—which, like here, followed a multiple-day evidentiary hearing—"[p]ost-*Buckhannon* case law continues to support the premise that a plaintiff can achieve prevailing party status at an administrative level and therefore be entitled to attorneys' fees and costs." *Antonio v. Boston Pub. Sch.,* 314 F.Supp.2d 95, 98, 99 (D.Mass.2004) (citing cases).

The First Circuit defines "prevailing party" in the IDEA context as follows:

[A] prevailing party is any party who "succeed[s] on any significant issue ... which achieves some of the benefits plaintiffs sought in bringing suit." *Hensley [v. Eckerhart],* 461 U.S. [424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983)]. The party's success cannot be a hollow victory; it must materially alter the litigants' legal relationship by modifying one party's behavior in a way that directly benefits the other. *Farrar v. Hobby,* 506 U.S. 103, 111–12, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992). Thus, the change effected must be material; a purely technical or *de minimis* victory cannot confer prevailing party status. *Tex. State Teachers Ass'n v. Garland Indep. Sch. Dist.,* 489 U.S. 782, 792, 109 S.Ct. 1486, 103 L.Ed.2d 866 (1989).

*Maine Sch. Admin. Dist. No. 35 v. Mr. R.,* 321 F.3d 9, 14–15 (1st Cir.2003) (ellipsis, footnote and further citations omitted). The touchstone, therefore, is whether plaintiffs "succeed on any significant issue ... which achieves some of the benefits

[they] sought in bringing suit." *Hensley,* 461 U.S. at 433, 103 S.Ct. 1933.

Here, Plaintiffs assert that they have prevailed because the hearing officer concluded that the IEP proposed by PVPA in March of 2006 "could be made appropriate for [Plaintiffs' son] with the addition of regular consultation by a professional with expertise in education of students with significant executive functioning disorders." (A.R. Vol. I at 291.) Accordingly, Plaintiffs seek full attorney's fees and costs of $29,318.75 claimed to have been incurred in the BSEA proceedings, as well as additional, unspecified fees associated with the filing and litigation of this action. (Complaint at 15 ¶ 2.)

For its part, PVPA points out that no such relief as was ordered by the hearing officer was ever requested, let alone mentioned, by Plaintiffs at the time of the BSEA hearing. PVPA also asserts that the order for regular consultation with an expert was only marginally related, if at all, to Plaintiffs' primary claims attacking the grading and credit policy and seeking compensatory services and tutoring. Thus, PVPA argues, Plaintiffs are entitled to no attorney's fees.

As an initial matter, the court notes that Plaintiffs have not given the court any basis upon which to recommend a precise fee. Other than the $29,318.75 mentioned in the complaint, no particular amount has been proposed nor have Plaintiffs tendered any breakdown of their attorney's rate or hours expended in this court to the date of oral argument. *See* 20 U.S.C. § 1415(i)(3)(B)(i) (fees must be "reasonable") and § 1515(i)(3)(c) (fees "shall be based on rates prevailing in the community in which the action or proceeding arose for the kind and quality of services furnished"). As a result, the court's analysis focuses on the following two questions: (1) are Plaintiffs entitled to *any* fees; and (2)

if so, what *percentage* of their attorney's reasonable fees should be awarded. The court's analysis leads it to recommend that Plaintiffs should be awarded no more than one-eighth (12.5%) of their reasonable attorney's fees, for a total award of $4,165.

As to the first question, the court believes that, although it is close, Plaintiffs are entitled to some fees. The First Circuit has held that, while "a purely technical or *de minimis* victory cannot confer prevailing party status[,] . . . a party may be considered 'prevailing' even without obtaining a favorable judgment on all (or even the most crucial) of her claims." *Mr. R.*, 321 F.3d at 15. This case, in the court's estimation, falls within that sphere. Even though Plaintiffs never requested an order for regular consultation with an expert, the hearing officer's order was related, at least in part, to Plaintiffs' primary claims attacking the grading and credit policy and seeking compensatory services and tutoring. Moreover, the order certainly modified PVPA's behavior in a way that "directly benefit[ted]" Plaintiffs' son. *Id.* at 14–15. As the hearing officer put it, "consultation . . . from a qualified professional with expertise in educating individuals with executive functioning problems" will enable PVPA to better "assess [Plaintiffs' son's] progress in conjunction with his IEP in addition to PVPA curriculum standards." (A.R. Vol. I at 293.)

As to the second question, however, the court in no way believes that Plaintiffs are entitled to one hundred percent of their fees. The court reaches this conclusion after canvassing the decisions of other courts faced with similar situations.

At one end of the spectrum, *i.e.*, the complete denial of fees where only modest success is achieved, is *Bristol Warren Reg'l Sch. Comm. v. R.I. Dep't of Educ.*, 253 F.Supp.2d 236 (D.R.I.2003). The court there ruled that, while the parents' overall goal—to have resource services provided to their daughter at a parochial school—was unavailable, they were at least entitled to an annual IEP meeting to assess their daughter's education plan. *Id.* at 243. The court held, however, that "such a ruling d[id] not provide the Parents with a significant victory to warrant an award of attorneys' fees" since "it [was] not even clear from the record and the pleadings that the Parents were claiming that [the school] was refusing to have such a meeting." *Id.* Other courts have similarly denied all fees to plaintiffs who were only marginally successful. *See, e.g., Kathleen H. v. Mass. Dep't of Educ.*, 154 F.3d 8, 15 (1st Cir.1998) ("Even if the BSEA decision were seen as resulting in some improvement's in [the student]'s program, it was not an abuse of discretion for the district court to deny attorneys' fees where the changes ordered are *de minimis* 'in the context of the Parents' broader goals in this case.' ") (quoting *Monticello Sch. Dist. No. 25 v. George L.*, 102 F.3d 895, 908 (7th Cir.1996) (in turn, affirming denial of attorneys' fees despite changes to IEP ordered by hearing officer)); *R.L. v. Plainville Bd. of Educ.*, 363 F.Supp.2d 222, 238–39 (D.Conn.2005) (awarding no fees where, even though hearing officer instructed school to amend IEP "to incorporate the specific amount of hours of special education services and mainstream services currently provided her and to incorporate audiological services," the school "prevailed on every substantive question submitted for decision"); *Linda T. v. Rice Lake Area Sch. Dist.*, 337 F.Supp.2d 1135, 1144 (W.D.Wis.2004) (awarding zero fees to parents who won on their "secondary" concern that their son's IEP needed revisions, but lost on their "primary" concern that he be placed in a private school).

Other courts, however, have not been as constricted when addressing prevailing

party status. For example, in *Mrs. M. v. Tri–Valley Cent. Sch. Dist.*, 363 F.Supp.2d 566 (S.D.N.Y.2002), the court determined that the plaintiff's degree of success, while "not great," was "not *de minimis.*" *Id.* at 573. As a result, the court deemed it appropriate to cut the fee request by fifty percent, observing that "[t]he single most significant factor to be considered . . . is the degree of success obtained." *Id.* at 572 (citing *G.M. by and Through R.F. v. New Britain Bd. of Educ.*, 173 F.3d 77, 81 (2d Cir.1999)). Similarly, in *A.S. v. Colts Neck Bd. of Educ.*, 190 Fed.Appx. 140, 143, 2006 WL 1795134, at *3 (3d Cir. June 30, 2006), the Third Circuit affirmed a district court's reduction of the plaintiffs' fee request by eighty percent where they prevailed on only three of their four issues.

This court believes that the latter approach—reducing the requested fees by a substantial percentage based on only limited success—to be appropriate here. *Cf. Hensley*, 461 U.S. at 430, 103 S.Ct. 1933 (noting that the degree to which a plaintiff succeeds is a relevant consideration). As described, Plaintiffs have prevailed in some small, non *de minimis,* measure. Having considered all that Plaintiffs sought, however, the court concludes that they are entitled to no more than one-eighth (12.5%) of their fees based on their having prevailed, at most, on only one of their eight requests for relief.

The relative importance (or unimportance) of the limited relief Plaintiffs achieved also supports this percentage. *See A.S.*, 190 Fed.Appx. at 143, 2006 WL 1795134, at *3. As the hearing officer stated on the last page of her order, there is some value in having a "consultant with expertise in designing and implementing accommodations and services for adolescents with ADHD and executive functioning disabilities within mainstream edu-

cational settings" and the consultant will be able to "advise and inform the TEAM and all PVPA staff working with [Plaintiffs' son] on methods for remediation and accommodation of [his] disabilities, as well as for accurately and understandably assessing [his] progress in his areas of special need as well as in the general curriculum." (A.R. Vol. I at 295.) As noted, however, the hearing officer also rejected all of Plaintiffs' other—and indeed their main—requests for relief.

As indicated, the court is not in a position to calculate the precise fees to which it believes Plaintiffs ought to be awarded. However, considering their claim of $29,318.75 for the underlying BSEA action, 12.5% of those fees (assuming they were all reasonable) would be $3,665. Tacking on $500, *i.e.*, one-eighth of the reasonable fee which the court estimates was likely accrued in this federal court action, the court believes, and will so recommend, that Plaintiffs be awarded a total of $4,165 in attorney's fees.

## IV. CONCLUSION

For the reasons stated, the court recommends as follows:

(1) that Plaintiffs' motion for summary judgment be DENIED, except for an order that PVPA pay them $4,165 in attorney's fees;

(2) that PVPA's motion for summary judgment be ALLOWED, except for an order that it pay Plaintiffs $4,165 in attorney's fees; and

(3) that the BSEA's motion for summary judgment be ALLOWED.[6]

Feb. 12, 2008.

---

**6.** The parties are advised that under the provisions of Rule 3(b) of the Rules for United

States Magistrates in the United States District Court for the District of Massachusetts, any party who objects to these findings and recommendations must file a written objection with the Clerk of this Court **within ten (10) days** of the party's receipt of this Report and Recommendation. The written objection must specifically identify the portion of the proposed findings or recommendations to which objection is made and the basis for such objection. The parties are further advised that failure to comply with this rule shall preclude further appellate review by the Court of Appeals of the District Court order entered pursuant to this Report and Recommendation. *See Keating v. Secretary of Health & Human Services,* 848 F.2d 271, 275 (1st Cir.1988); *United States v. Valencia–Copete,* 792 F.2d 4, 6 (1st Cir.1986); *Scott v. Schweiker,* 702 F.2d 13, 14 (1st Cir.1983); *United States v. Vega,* 678 F.2d 376, 378–379 (1st Cir.1982); *Park Motor Mart, Inc. v. Ford Motor Co.,* 616 F.2d 603, 604 (1st Cir.1980). *See also Thomas v. Arn,* 474 U.S. 140, 154–55, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985). A party may respond to another party's objections within ten (10) days after being served with a copy thereof.